OWEN EQUIPMENT & ERECTION CO. *v.* KROGER,
ADMINISTRATRIX

No. 77–677.   Argued April 18, 1978—Decided June 21, 1978

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and MARSHALL, BLACKMUN, POWELL, REHNQUIST, and STEVENS, JJ., joined. WHITE, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 377.

*Emil F. Sodoro* argued the cause for petitioner. With him on the briefs were *David A. Johnson* and *Ronald H. Stave.*

*Warren C. Schrempp* argued the cause for respondent. With him on the brief were *John J. Hanley* and *Thomas G. McQuade.*

Mr. Justice Stewart delivered the opinion of the Court.

In an action in which federal jurisdiction is based on diversity of citizenship, may the plaintiff assert a claim against a third-party defendant when there is no independent basis for federal jurisdiction over that claim? The Court of Appeals for the Eighth Circuit held in this case that such a claim is within the ancillary jurisdiction of the federal courts. We granted certiorari, 434 U. S. 1008, because this decision conflicts with several recent decisions of other Courts of Appeals.[1]

## I

On January 18, 1972, James Kroger was electrocuted when the boom of a steel crane next to which he was walking came too close to a high-tension electric power line. The respondent (his widow, who is the administratrix of his estate) filed a wrongful-death action in the United States District Court for the District of Nebraska against the Omaha Public Power District (OPPD). Her complaint alleged that OPPD's negligent construction, maintenance, and operation of the power line had caused Kroger's death. Federal jurisdiction was based on diversity of citizenship, since the respondent was a citizen of Iowa and OPPD was a Nebraska corporation.

OPPD then filed a third-party complaint pursuant to Fed. Rule Civ. Proc. 14 (a)[2] against the petitioner, Owen Equip-

---

[1] *Fawvor* v. *Texaco, Inc.*, 546 F. 2d 636 (CA5); *Saalfrank* v. *O'Daniel*, 533 F. 2d 325 (CA6); *Parker* v. *W. W. Moore & Sons*, 528 F. 2d 764 (CA4); *Joseph* v. *Chrysler Corp.*, 513 F. 2d 626 (CA3), aff'g 61 F. R. D. 347 (WD Pa.); *Kenrose Mfg. Co.* v. *Fred Whitaker Co.*, 512 F. 2d 890 (CA4).

[2] Rule 14 (a) provides in relevant part:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. . . . The person served with the summons and third-party complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's

368

ment and Erection Co. (Owen), alleging that the crane was owned and operated by Owen, and that Owen's negligence had been the proximate cause of Kroger's death.[3] OPPD later moved for summary judgment on the respondent's complaint against it. While this motion was pending, the respondent was granted leave to file an amended complaint naming Owen as an additional defendant. Thereafter, the District Court granted OPPD's motion for summary judgment in an unreported opinion.[4] The case thus went to trial between the respondent and the petitioner alone.

The respondent's amended complaint alleged that Owen was "a Nebraska corporation with its principal place of busi-

---

claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counter-claims and cross-claims as provided in Rule 13."

[3] Under Rule 14 (a), a third-party defendant may not be impleaded merely because he may be liable to the *plaintiff*. See n. 2, *supra;* see also Advisory Committee's Notes on 1946 Amendment to Fed. Rule Civ. Proc. 14, 28 U. S. C. App., pp. 7752–7753. While the third-party complaint in this case alleged merely that Owen's negligence caused Kroger's death, and the basis of Owen's alleged liability *to OPPD* is nowhere spelled out, OPPD evidently relied upon the state common-law right of contribution among joint tortfeasors. See *Dairyland Ins. Co.* v. *Mumert,* 212 N. W. 2d 436, 438 (Iowa); *Best* v. *Yerkes,* 247 Iowa 800, 77 N. W. 2d 23. The petitioner has never challenged the propriety of the third-party complaint as such.

[4] Judgment was entered pursuant to Fed. Rule Civ. Proc. 54 (b), and the Court of Appeals affirmed. *Kroger* v. *Omaha Public Power Dist.,* 523 F. 2d 161 (CA8).

ness in Nebraska." Owen's answer admitted that it was "a corporation organized and existing under the laws of the State of Nebraska," and denied every other allegation of the complaint. On the third day of trial, however, it was disclosed that the petitioner's principal place of business was in Iowa, not Nebraska,[5] and that the petitioner and the respondent were thus both citizens of Iowa.[6] The petitioner then moved to dismiss the complaint for lack of jurisdiction. The District Court reserved decision on the motion, and the jury thereafter returned a verdict in favor of the respondent. In an unreported opinion issued after the trial, the District Court denied the petitioner's motion to dismiss the complaint.

The judgment was affirmed on appeal. 558 F. 2d 417. The Court of Appeals held that under this Court's decision in *Mine Workers* v. *Gibbs*, 383 U. S. 715, the District Court had jurisdictional power, in its discretion, to adjudicate the respondent's claim against the petitioner because that claim arose from the "core of 'operative facts' giving rise to both [respondent's] claim against OPPD and OPPD's claim against Owen." 558 F. 2d, at 424. It further held that the District Court had properly exercised its discretion in proceeding to decide the case even after summary judgment had been granted to OPPD, because the petitioner had concealed its Iowa citizenship from the respondent. Rehearing en banc was denied by an equally divided court. 558 F. 2d 417.

---

[5] The problem apparently was one of geography. Although the Missouri River generally marks the boundary between Iowa and Nebraska, Carter Lake, Iowa, where the accident occurred and where Owen had its main office, lies west of the river, adjacent to Omaha, Neb. Apparently the river once avulsed at one of its bends, cutting Carter Lake off from the rest of Iowa.

[6] Title 28 U. S. C. § 1332 (c) provides that "[f]or the purposes of [diversity jurisdiction] . . . , a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

## II

It is undisputed that there was no independent basis of federal jurisdiction over the respondent's state-law tort action against the petitioner, since both are citizens of Iowa. And although Fed. Rule Civ. Proc. 14 (a) permits a plaintiff to assert a claim against a third-party defendant, see n. 2, *supra,* it does not purport to say whether or not such a claim requires an independent basis of federal jurisdiction. Indeed, it could not determine that question, since it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction.[7]

In affirming the District Court's judgment, the Court of Appeals relied upon the doctrine of ancillary jurisdiction, whose contours it believed were defined by this Court's holding in *Mine Workers* v. *Gibbs, supra.* The *Gibbs* case differed from this one in that it involved pendent jurisdiction, which concerns the resolution of a plaintiff's federal- and state-law claims against a single defendant in one action. By contrast, in this case there was no claim based upon substantive federal law, but rather state-law tort claims against two different defendants. Nonetheless, the Court of Appeals was correct in perceiving that *Gibbs* and this case are two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?[8] But we believe that the Court of Appeals failed to understand the scope of the doctrine of the *Gibbs* case.

The plaintiff in *Gibbs* alleged that the defendant union had violated the common law of Tennessee as well as the federal

---

[7] Fed. Rule Civ. Proc. 82; see *Snyder* v. *Harris,* 394 U. S. 332; *Sibbach* v. *Wilson & Co.,* 312 U. S. 1, 10.

[8] No more than in *Aldinger* v. *Howard,* 427 U. S. 1, is it necessary to determine here "whether there are any 'principled' differences between pendent and ancillary jurisdiction; or, if there are, what effect *Gibbs* had on such differences." *Id.,* at 13.

prohibition of secondary boycotts. This Court held that, although the parties were not of diverse citizenship, the District Court properly entertained the state-law claim as pendent to the federal claim. The crucial holding was stated as follows:

> "Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ,' U. S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U. S., at 725 (emphasis in original).[9]

It is apparent that *Gibbs* delineated the constitutional limits of federal judicial power. But even if it be assumed that the District Court in the present case had constitutional power to decide the respondent's lawsuit against the petitioner,[10] it does not follow that the decision of the Court of Appeals

---

[9] The Court further noted that even when such power exists, its exercise remains a matter of discretion based upon "considerations of judicial economy, convenience and fairness to litigants," 383 U. S., at 726, and held that the District Court had not abused its discretion in retaining jurisdiction of the state-law claim.

[10] Federal jurisdiction in *Gibbs* was based upon the existence of a question of federal law. The Court of Appeals in the present case believed that the "common nucleus of operative fact" test also determines the outer boundaries of constitutionally permissible federal jurisdiction when that jurisdiction is based upon diversity of citizenship. We may assume without deciding that the Court of Appeals was correct in this regard. See also n. 13, *infra*.

was correct. Constitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress. *Palmore* v. *United States,* 411 U. S. 389, 401; *Lockerty* v. *Phillips,* 319 U. S. 182, 187; *Kline* v. *Burke Constr. Co.,* 260 U. S. 226, 234; *Cary* v. *Curtis,* 3 How. 236, 245.

That statutory law as well as the Constitution may limit a federal court's jurisdiction over nonfederal claims [11] is well illustrated by two recent decisions of this Court, *Aldinger* v. *Howard,* 427 U. S. 1, and *Zahn* v. *International Paper Co.,* 414 U. S. 291. In *Aldinger* the Court held that a Federal District Court lacked jurisdiction over a state-law claim against a county, even if that claim was alleged to be pendent to one against county officials under 42 U. S. C. § 1983. In *Zahn* the Court held that in a diversity class action under Fed. Rule Civ. Proc. 23 (b)(3), the claim of each member of the plaintiff class must independently satisfy the minimum jurisdictional amount set by 28 U. S. C. § 1332 (a), and rejected the argument that jurisdiction existed over those claims that involved $10,000 or less as ancillary to those that involved more. In each case, despite the fact that federal and nonfederal claims arose from a "common nucleus of operative fact," the Court held that the statute conferring jurisdiction over the federal claim did not allow the exercise of jurisdiction over the nonfederal claims.[12]

---

[11] As used in this opinion, the term "nonfederal claim" means one as to which there is no independent basis for federal jurisdiction. Conversely, a "federal claim" means one as to which an independent basis for federal jurisdiction exists.

[12] In *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, we have overruled *Monroe* v. *Pape,* 365 U. S. 167, insofar as it held that political subdivisions are never amenable to suit under 42 U. S. C. § 1983—the basis of the holding in *Aldinger* that 28 U. S. C. § 1343 (3)

The *Aldinger* and *Zahn* cases thus make clear that a finding that federal and nonfederal claims arise from a "common nucleus of operative fact," the test of *Gibbs*, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has . . . expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim. *Aldinger* v. *Howard, supra,* at 18.

## III

The relevant statute in this case, 28 U. S. C. § 1332 (a)(1), confers upon federal courts jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $10,000 . . . and is between . . . citizens of different States." This statute and its predecessors have consistently been held to require complete diversity of citizenship.[13] That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff. Over the years Congress has repeatedly re-enacted or amended the statute conferring diversity jurisdiction, leaving intact this rule of complete diversity.[14] Whatever may have been the original

---

does not allow pendent jurisdiction of a state-law claim against a county. But *Monell* in no way qualifies the holding of *Aldinger* that the jurisdictional questions presented in a case such as this one are statutory as well as constitutional, a point on which the dissenters in *Aldinger* agreed with the Court. See 427 U. S., at 22 n. 3 (BRENNAN, J., joined by MARSHALL and BLACKMUN, JJ., dissenting).

[13] *E. g., Strawbridge* v. *Curtiss,* 3 Cranch 267; *Coal Co.* v. *Blatchford,* 11 Wall. 172; *Indianapolis* v. *Chase Nat. Bank,* 314 U. S. 63, 69; *American Fire & Cas. Co.* v. *Finn,* 341 U. S. 6, 17. It is settled that complete diversity is not a constitutional requirement. *State Farm Fire & Cas. Co.* v. *Tashire,* 386 U. S. 523, 530–531.

[14] The various Acts are enumerated and described in 1 J. Moore, Federal Practice ¶ 0.71 [4] (2d ed. 1977).

purposes of diversity-of-citizenship jurisdiction,[15] this subsequent history clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant. Cf. *Snyder* v. *Harris*, 394 U. S. 332, 338–339.[16]

Thus it is clear that the respondent could not originally have brought suit in federal court naming Owen and OPPD as codefendants, since citizens of Iowa would have been on both sides of the litigation. Yet the identical lawsuit resulted when she amended her complaint. Complete diversity was destroyed just as surely as if she had sued Owen initially. In either situation, in the plain language of the statute, the "matter in controversy" could not be "between . . . citizens of different States."

It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded. Yet under the reasoning of the Court of Appeals in this case, a plaintiff could defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants.[17] If, as the Court of Appeals thought, a "common

---

[15] See C. Wright, Law of Federal Courts § 23 (3d ed. 1976), for a discussion of the various theories that have been advanced to explain the constitutional grant of diversity-of-citizenship jurisdiction.

[16] Notably, Congress enacted § 1332 as part of the Judicial Code of 1948, 62 Stat. 930, shortly after Rule 14 was amended in 1946. When the Rule was amended, the Advisory Committee noted that "in any case where the plaintiff could not have joined the third party originally because of jurisdictional limitations such as lack of diversity of citizenship, the majority view is that any attempt by the plaintiff to amend his complaint and assert a claim against the impleaded third party would be unavailing." 28 U. S. C. App., p. 7752. The subsequent re-enactment without relevant change of the diversity statute may thus be seen as evidence of congressional approval of that "majority view."

[17] This is not an unlikely hypothesis, since a defendant in a tort suit

nucleus of operative fact" were the only requirement for ancillary jurisdiction in a diversity case, there would be no principled reason why the respondent in this case could not have joined her cause of action against Owen in her original complaint as ancillary to her claim against OPPD. Congress' requirement of complete diversity would thus have been evaded completely.

It is true, as the Court of Appeals noted, that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims.[18] But in determining whether jurisdiction

such as this one would surely try to limit his liability by impleading any joint tortfeasors for indemnity or contribution. Some commentators have suggested that the possible abuse of third-party practice could be dealt with under 28 U. S. C. § 1359, which forbids collusive attempts to create federal jurisdiction. See, e. g., 3 J. Moore, Federal Practice ¶ 14.27 [1], p. 14–571 (2d ed. 1974); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1444, pp. 231–232 (1971); Note, Rule 14 Claims and Ancillary Jurisdiction, 57 Va. L. Rev. 265, 274–275 (1971). The dissenting opinion today also expresses this view. Post, at 383. But there is nothing necessarily collusive about a plaintiff's selectively suing only those tortfeasors of diverse citizenship, or about the named defendants' desire to implead joint tortfeasors. Nonetheless, the requirement of complete diversity would be eviscerated by such a course of events.

[18] The ancillary jurisdiction of the federal courts derives originally from cases such as Freeman v. Howe, 24 How. 450, which held that when federal jurisdiction "effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction." Aldinger v. Howard, 427 U. S., at 11. More recently, it has been said to include cases that involve multiparty practice, such as compulsory counterclaims, e. g., Moore v. New York Cotton Exchange, 270 U. S. 593; impleader, e. g., H. L. Peterson Co. v. Applewhite, 383 F. 2d 430, 433 (CA5); Dery v. Wyer, 265 F. 2d 804 (CA2); cross-claims, e. g., LASA Per L'Industria Del Marmo Soc. Per Azioni v. Alexander, 414 F. 2d 143 (CA6); Scott v. Fancher, 369 F. 2d 842, 844 (CA5); Glen Falls Indemnity Co. v. United States ex rel. Westinghouse Electric Supply Co., 229 F. 2d 370, 373–374 (CA9); or intervention as of right, e. g., Phelps v. Oaks, 117 U. S. 236, 241; Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F. 2d 1103, 1113–1115 (CA5).

over a nonfederal claim exists, the context in which the non-federal claim is asserted is crucial. See *Aldinger* v. *Howard,* 427 U. S., at 14. And the claim here arises in a setting quite different from the kinds of nonfederal claims that have been viewed in other cases as falling within the ancillary jurisdiction of the federal courts.

First, the nonfederal claim in this case was simply not ancillary to the federal one in the same sense that, for example, the impleader by a defendant of a third-party defendant always is. A third-party complaint depends at least in part upon the resolution of the primary lawsuit. See n. 3, *supra.* Its relation to the original complaint is thus not mere factual similarity but logical dependence. Cf. *Moore* v. *New York Cotton Exchange,* 270 U. S. 593, 610. The respondent's claim against the petitioner, however, was entirely separate from her original claim against OPPD, since the petitioner's liability to her depended not at all upon whether or not OPPD was also liable. Far from being an ancillary and dependent claim, it was a new and independent one.

Second, the nonfederal claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court. By contrast, ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court.[19] A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations. "[T]he efficiency plaintiff seeks so avidly is available without question in the state courts." *Kenrose Mfg. Co.* v. *Fred Whitaker Co.,* 512 F. 2d 890, 894 (CA4).[20]

---

[19] See n. 18, *supra.*

[20] Whether Iowa's statute of limitations would now bar an action by the respondent in an Iowa court is, of course, entirely a matter of state

It is not unreasonable to assume that, in generally requiring complete diversity, Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. Those practical needs are the basis of the doctrine of ancillary jurisdiction. But neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case. Congress has established the basic rule that diversity jurisdiction exists under 28 U. S. C. § 1332 only when there is complete diversity of citizenship. "The policy of the statute calls for its strict construction." *Healy* v. *Ratta,* 292 U. S. 263, 270; *Indianapolis* v. *Chase Nat. Bank,* 314 U. S. 63, 76; *Thomson* v. *Gaskill,* 315 U. S. 442, 446; *Snyder* v. *Harris,* 394 U. S., at 340. To allow the requirement of complete diversity to be circumvented as it was in this case would simply flout the congressional command.[21]

Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN joins, dissenting.

The Court today states that "[i]t is not unreasonable to assume that, in generally requiring complete diversity, Congress did not intend to confine the jurisdiction of federal courts so

---

law. See Iowa Code § 614.10 (1977). Compare 558 F. 2d, at 420, with *id.,* at 432 n. 42 (Bright, J., dissenting); cf. *Burnett* v. *New York Central R. Co.,* 380 U. S. 424, 431–432, and n. 9.

[21] Our holding is that the District Court lacked power to entertain the respondent's lawsuit against the petitioner. Thus, the asserted inequity in the respondent's alleged concealment of its citizenship is irrelevant. Federal judicial power does not depend upon "prior action or consent of the parties." *American Fire & Cas. Co.* v. *Finn,* 341 U. S., at 17–18.

inflexibly that they are unable . . . effectively to resolve an entire, logically entwined lawsuit." *Ante,* at 377. In spite of this recognition, the majority goes on to hold that in diversity suits federal courts do not have the jurisdictional power to entertain a claim asserted by a plaintiff against a third-party defendant, no matter how entwined it is with the matter already before the court, unless there is an independent basis for jurisdiction over that claim. Because I find no support for such a requirement in either Art. III of the Constitution or in any statutory law, I dissent from the Court's "unnecessarily grudging"[1] approach.

The plaintiff below, Mrs. Kroger, chose to bring her lawsuit against the Omaha Public Power District (OPPD) in Federal District Court. No one questions the power of the District Court to entertain this claim, for Mrs. Kroger at the time was a citizen of Iowa, OPPD was a citizen of Nebraska, and the amount in controversy was greater than $10,000; jurisdiction therefore existed under 28 U. S. C. § 1332 (a). As permitted by Fed. Rule Civ. Proc. 14 (a), OPPD impleaded petitioner Owen Equipment & Erection Co. (Owen). Although OPPD's claim against Owen did not raise a federal question and although it was alleged that Owen was a citizen of the same State as OPPD, the parties and the court apparently believed that the District Court's ancillary jurisdiction encompassed this claim. Subsequently, Mrs. Kroger asserted a claim against Owen, everyone believing at the time that these two parties were citizens of different States. Because it later came to light that Mrs. Kroger and Owen were in fact both citizens of Iowa, the Court concludes that the District Court lacked jurisdiction over the claim.

In *Mine Workers* v. *Gibbs,* 383 U. S. 715, 725 (1966), we held that once a claim has been stated that is of sufficient substance to confer subject-matter jurisdiction on the federal dis-

---

[1] See *Mine Workers* v. *Gibbs,* 383 U. S. 715, 725 (1966).

trict court, the court has judicial power to consider a nonfederal claim if it and the federal claim[2] are derived from "a common nucleus of operative fact." Although the specific facts of that case concerned a state claim that was said to be pendent to a federal-question claim, the Court's language and reasoning were broad enough to cover the instant factual situation: "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Ibid.* (footnote omitted). In the present case, Mrs. Kroger's claim against Owen and her claim against OPPD derived from a common nucleus of fact; this is necessarily so because in order for a plaintiff to assert a claim against a third-party defendant, Fed. Rule Civ. Proc. 14 (a) requires that it "aris[e] out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff . . . ." Furthermore, the substantiality of the claim Mrs. Kroger asserted against OPPD is unquestioned. Accordingly, as far as Art. III of the Constitution is concerned, the District Court had power to entertain Mrs. Kroger's claim against Owen.

The majority correctly points out, however, that the analysis cannot stop here. As *Aldinger* v. *Howard,* 427 U. S. 1 (1976), teaches, the jurisdictional power of the federal courts may be limited by Congress, as well as by the Constitution. In *Aldinger,* although the plaintiff's state claim against Spokane County was closely connected with her 42 U. S. C. § 1983 claim against the county treasurer, the Court held that the District Court did not have pendent jurisdiction over the state claim, for, under the Court's precedents at that time, it was thought that Congress had specifically determined not to confer on the federal courts jurisdiction over civil rights

---

[2] I use the terms "federal claim" and "nonfederal claim" in the same sense that the majority uses them. See *ante,* at 372 n. 11.

claims against cities and counties. That being so, the Court refused to allow "the federal courts to fashion a jurisdictional doctrine under the general language of Art. III enabling them to circumvent this exclusion . . . ." 427 U. S., at 16.[3]

In the present case, the only indication of congressional intent that the Court can find is that contained in the diversity jurisdictional statute, 28 U. S. C. § 1332 (a), which states that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000 . . . and is between . . . citizens of different States . . . ." Because this statute has been interpreted as requiring complete diversity of citizenship between each plaintiff and each defendant, *Strawbridge* v. *Curtiss,* 3 Cranch 267 (1806), the Court holds that the District Court did not have ancillary jurisdiction over Mrs. Kroger's claim against Owen. In so holding, the Court unnecessarily expands the scope of the complete-diversity requirement while substantially limiting the doctrine of ancillary jurisdiction.

The complete-diversity requirement, of course, could be viewed as meaning that in a diversity case, a federal district court may adjudicate only those claims that are between parties of different States. Thus, in order for a defendant to implead a third-party defendant, there would have to be diversity of citizenship; the same would also be true for cross-claims between defendants and for a third-party defendant's claim against a plaintiff. Even the majority, however, refuses to read the complete-diversity requirement so broadly; it

---

[3] We were careful in *Aldinger* to point out the limited nature of our holding:

"There are, of course, many variations in the language which Congress has employed to confer jurisdiction upon the federal courts, and we decide here only the issue of so-called 'pendent party' jurisdiction with respect to a claim brought under §§ 1343 (3) and 1983. Other statutory grants and other alignments of parties and claims might call for a different result." 427 U. S., at 18.

recognizes with seeming approval the exercise of ancillary jurisdiction over nonfederal claims in situations involving impleader, cross-claims, and counterclaims. See *ante,* at 375. Given the Court's willingness to recognize ancillary jurisdiction in these contexts, despite the requirements of § 1332 (a), I see no justification for the Court's refusal to approve the District Court's exercise of ancillary jurisdiction in the present case.

It is significant that a plaintiff who asserts a claim against a third-party defendant is not seeking to add a new party to the lawsuit. In the present case, for example, Owen had already been brought into the suit by OPPD, and, that having been done, Mrs. Kroger merely sought to assert against Owen a claim arising out of the same transaction that was already before the court. Thus the situation presented here is unlike that in *Aldinger, supra,* wherein the Court noted:

"[I]t is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.' . . . True, the same considerations of judicial economy would be served insofar as plaintiff's claims 'are such that he would ordinarily be expected to try them all in one judicial proceeding . . . .' [*Gibbs,* 383 U. S., at 725.] But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of

general jurisdiction, are courts of limited jurisdiction marked out by Congress." 427 U. S., at 14–15.

Because in the instant case Mrs. Kroger merely sought to assert a claim against someone already a party to the suit, considerations of judicial economy, convenience, and fairness to the litigants—the factors relied upon in *Gibbs*—support the recognition of ancillary jurisdiction here. Already before the court was the whole question of the cause of Mr. Kroger's death. Mrs. Kroger initially contended that OPPD was responsible; OPPD in turn contended that Owen's negligence had been the proximate cause of Mr. Kroger's death. In spite of the fact that the question of Owen's negligence was already before the District Court, the majority requires Mrs. Kroger to bring a separate action in state court in order to assert that very claim. Even if the Iowa statute of limitations will still permit such a suit, see *ante,* at 376–377, n. 20, considerations of judicial economy are certainly not served by requiring such duplicative litigation.[4]

The majority, however, brushes aside such considerations of convenience, judicial economy, and fairness because it concludes that recognizing ancillary jurisdiction over a plaintiff's claim against a third-party defendant would permit the plaintiff to circumvent the complete-diversity requirement and thereby "flout the congressional command." Since the plain-

---

[4] It is true that prior to trial OPPD was dismissed as a party to the suit and that, as we indicated in *Gibbs,* the dismissal prior to trial of the federal claim will generally require the dismissal of the nonfederal claim as well. See 383 U. S., at 726. Given the unusual facts of the present case, however—in particular, the fact that the actual location of Owen's principal place of business was not revealed until the third day of trial—fairness to the parties would lead me to conclude that the District Court did not abuse its discretion in retaining jurisdiction over Mrs. Kroger's claim against Owen. Under the Court's disposition, of course, it would not matter whether or not the federal claim is tried, for in either situation the court would have no jurisdiction over the plaintiff's nonfederal claim against the third-party defendant.

tiff in such a case does not bring the third-party defendant into the suit, however, there is no occasion for deliberate circumvention of the diversity requirement, absent collusion with the defendant. In the case of such collusion, of which there is absolutely no indication here,[5] the court can dismiss the action under the authority of 28 U. S. C. § 1359.[6] In the absence of such collusion, there is no reason to adopt an absolute rule prohibiting the plaintiff from asserting those claims that he may properly assert against the third-party defendant pursuant to Fed. Rule Civ. Proc. 14 (a). The plaintiff in such a situation brings suit against the defendant only, with absolutely no assurance that the defendant will decide or be able to implead a particular third-party defendant. Since the plaintiff has no control over the defendant's decision to implead a third party, the fact that he could not have originally sued that party in federal court should be irrelevant. Moreover, the fact that a plaintiff in some cases may be able to foresee the subsequent chain of events leading to the impleader does not seem to me to be a sufficient reason to declare that a district court does not have the *power* to exercise ancillary jurisdiction over the plaintiff's claims against the third-party defendant.[7]

---

[5] When Mrs. Kroger brought suit, it was believed that Owen was a citizen of Nebraska, not Iowa. Therefore, had she desired at that time to make Owen a party to the suit, she would have done so directly by naming Owen as a defendant.

[6] Section 1359 states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

[7] Under the *Gibbs* analysis, recognition of the district court's power to hear a plaintiff's nonfederal claim against a third-party defendant in a diversity suit would not mean that the court would be required to entertain such claims in all cases. The district court would have the discretion to dismiss the nonfederal claim if it concluded that the interests of judicial economy, convenience, and fairness would not be served by the retention of the claim in the federal lawsuit. See *Gibbs*, 383 U. S., at 726. Ac-

384

We have previously noted that "[s]ubsequent decisions of this Court indicate that *Strawbridge* is not to be given an expansive reading." *State Farm Fire & Cas. Co.* v. *Tashire,* 386 U. S. 523, 531 n. 6 (1967). In light of this teaching, it seems to me appropriate to view § 1332 as requiring complete diversity only between the plaintiff and those parties he actually brings into the suit. Beyond that, I would hold that in a diversity case the District Court has power, both constitutional and statutory, to entertain all claims among the parties arising from the same nucleus of operative fact as the plaintiff's original, jurisdiction-conferring claim against the defendant. Accordingly, I dissent from the Court's disposition of the present case.

cordingly, the majority's concerns that lead it to conclude that ancillary jurisdiction should not be recognized in the present situation could be met on a case-by-case basis, rather than by the absolute rule it adopts.