**David A. NIXON, Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD, et al., Defendants.**

No. 82–1071–CV–W–3.

United States District Court,
W.D. Missouri, W.D.

March 21, 1983.

David A. Nixon, pro se.

Mark J. Zimmermann, Asst. U.S. Atty., Kansas City, Mo., Peter B. Broida, Washington, D.C., Anne Purcell, Kansas City, Mo., for defendants.

## OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Plaintiff, David Nixon, in his amended complaint of December 20, 1982,[1] alleges that the defendant National Labor Relations Board (NLRB), Regional Director Thomas Hendrix, and Deputy Assistant General Counsel F. Rozier Sharp (referred to cumulatively as Defendant Board) negligently breached certain duties owed plaintiff. The amended complaint also contains allegations that the NLRB Union; the NLRB Union Local 17; District V Vice President T. Stephen Jacoby; President, Local 17, Robert Fetsch; and Professional Grievance Representative, Local 17, D. Michael McConnell (referred to cumulatively as Defendant Union) caused per se libelous statements regarding plaintiff to be published. On February 8, 1983, Defendant Union moved to dismiss the action for lack of subject matter jurisdiction and also for lack of venue. The Defendant Board, on February 10, 1983, also moved to dismiss for lack of subject matter jurisdiction and fail-

---

1. Plaintiff filed his initial complaint on December 16, 1982.

ure to state a claim for relief. The issues raised by the motions of the defendants have been briefed by plaintiff and rejoined by Defendant Union. The court dismisses the action in regard to all defendants.

The court derived the following information from the plaintiff's complaint and later pleadings. Plaintiff is employed by the NLRB at its Region 17 office in Kansas City, Kansas as a supervisory attorney. His position is included within the merit pay system of the NLRB. A written formal report on the job performance of every employee covered by the system is done annually. The system also calls for continual appraisal of those covered and for those reviewing performance to provide constructive suggestions for improvement when a problem is found.

Plaintiff received a very favorable rating on his last report, May 27, 1982. The only drawback being that neither the Regional Attorney nor Regional Director Hendrix believed that plaintiff was "well qualified" for promotion to the position of regional attorney. On June 9, 1982 plaintiff filed an appeal with the Washington, D.C. office of the NLRB regarding his eligibility for the regional attorney position and around August 12, 1982 he filed an unfair labor practices charge against Regional Director Hendrix and others regarding the same matter. He later dropped the charge after learning that his appeal had been successful and the job performance report changed to indicate that he was well qualified for the position.

Within a couple of days of plaintiff's withdrawal of the labor charge, Regional Director Hendrix met with a representative of the NLRB Union and an employee/member of the Union under plaintiff's supervision. Plaintiff believes that Hendrix told the Union representative and the employee that he believed that the plaintiff was "after" the employee, but that he was powerless to do anything because the Washington, D.C. office would not back him against the plaintiff.

On the same day, October 19, 1982, Hendrix also met with plaintiff and discussed the employee who was present at the above meeting. Hendrix told plaintiff that he was aware of the employee's failure to follow instructions on case handling. He also told plaintiff that the employee had a history of similar problems with other supervisors. Hendrix did not then, nor at any other time, tell plaintiff that he thought plaintiff was after the employee or being unfair to her.

After the October 19 meeting with Hendrix, the Union contacted the NLRB in Washington, D.C. and complained about the plaintiff. Within a week of the complaint Deputy Assistant General Counsel Sharp came to the Kansas City, Kansas office to investigate the plaintiff. Plaintiff believes that during Sharp's three week investigation he only interviewed persons he believed to have a negative view of the plaintiff.

The Union publishes a periodical, *The Remedy,* that is distributed nationwide and in Puerto Rico to the regional offices of the NLRB. In November of 1982 *The Remedy* included an article on the plaintiff. The article discussed the October 19 meeting between Hendrix, the employee, and the Union representative; it contained quotes attributed to Hendrix's conversation at the meeting; and it mentioned the Sharp investigation. The gist of the article concerned plaintiff's abuse of his position to harass employees under him.

Based on the foregoing plaintiff contends that both Hendrix and Sharp breached duties owed him, and that the Union in *The Remedy* libeled him. Specifically, plaintiff maintains that Hendrix owed him a duty to carefully assess his job performance and to provide him notice of any deficiencies in his performance under the NLRB's merit pay system. Plaintiff further maintains that Sharp owed him a duty to "conduct fairly, impartially, and with reasonable care any investigation" of his job performance. According to plaintiff, both Hendrix and Sharp negligently breached their duty and that both willfully intended to injure plaintiff in violation of his First and Fifth Amendment rights because he filed the unfair labor charge. Finally, plaintiff asserts that the Union and its officers and agents published the article, derogative of his char-

acter and work performance, knowing it to be false, with malicious intent to injure him. Jurisdiction is claimed under 28 U.S.C. § 1346(b),[2] the Federal Tort Claims Act (FTCA), and the doctrine of pendent jurisdiction.

Three issues are presented for resolution by the court. One, whether plaintiff's claims against Hendrix and Sharp established a tort action remediable under the FTCA, thereby providing subject matter jurisdiction over Defendant Board. Two, if plaintiff has an action under the FTCA does the doctrine of pendent jurisdiction provide subject matter jurisdiction over Defendant Union. Finally, if subject matter jurisdiction of plaintiff's libel claim against Defendant Union exists, is venue also proper in this district.[3] The court will take these questions up in this order.

## FTCA ACTION

Both sets of defendants claim that plaintiff does not have a claim under the FTCA and, therefore, that sovereign immunity has not been waived. The gist of the argument is that the tort plaintiff alleges, is libel/defamation which is an exception to the FTCA waiver of sovereign immunity. Plaintiff responds that negligent conduct and not libel forms the basis of his claim.

■ The FTCA was designed to act as a waiver of the sovereign immunity of the federal government when an employee acting within the scope of his employment causes injury or property damage to another by his negligent or wrongful act or omission. Even then, however, the United States is still only liable if the plaintiff would have had a tort action against a private party in the state where the conduct

2. Plaintiff initially claimed jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2) and the Civil Rights Act of 1871, 42 U.S.C. § 1983, as well as the FTCA. He abandoned the Tucker Act and the Civil Rights Act as sources of jurisdiction in his response to defendants' motions to dismiss, and now also seeks leave to amend his complaint to remove these as grounds for jurisdiction.

3. The court also questions whether venue is appropriate in this district as applied to the Defendant Board.

or omission occurred. 28 U.S.C. § 1346(b).[4] Also, not all torts come within the remedial purview of the FTCA. Section 1346(b) does not waive immunity for any claims that arise out of libel or slander. 28 U.S.C. § 2680(h). Finally, one last prerequisite must be satisfied before the FTCA becomes operative; the claim must first be presented to the appropriate federal agency for final determination. 28 U.S.C. § 2675. This is a jurisdictional requirement that can not be waived. *Bruce v. United States*, 621 F.2d 914, 918 (8th Cir.1980); *West v. United States*, 592 F.2d 487, 492 (8th Cir.1979); *Smith v. United States*, 588 F.2d 1209, 1211 (8th Cir.1978).

■ Taking this last prerequisite first, the court concludes that it must dismiss the present action as against Defendant Board. Plaintiff does not deny the relevance of the requirement posited in section 2675. In fact, plaintiff contends that he has satisfied the section by filing an administrative claim on February 14, 1983. Under section 2675, however, a plaintiff can not file an FTCA action in a federal court until his administrative claim receives a final decision by the agency or six months passes without the agency rendering such a decision. Neither has occurred here. It is, therefore, inappropriate at this point to rule on whether plaintiff has a valid FTCA claim.

## PENDENT JURISDICTION

The court will, however, at this time rule on plaintiff's pendent claim against Defendant Union. Depending on the outcome of the administrative process, the court presumes that plaintiff will refile his action. The following discussion, of course, assumes, without deciding, the viability of plaintiff's FTCA claim.

4. In pertinent part the FTCA provides that: the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property ... caused by the negligent or wrongful conduct or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

■ Historically, federal courts have had the power to decide certain non-federal claims. *See Osborn v. Bank of the United States,* 22 U.S. 738, 9 Wheat 738, 822–23, 6 L.Ed. 204, 224 (1824). The modern formulation of the doctrine of pendent jurisdiction can be traced to *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs* the Court ruled that a federal district court has the power to rule on any non-federal claims of a claimant that arise out of "a common nucleus of operative fact" with a federal claim, if the federal claim is sufficient to confer subject matter jurisdiction. A "common nucleus" is evidenced by the fact that "if considered without regard to their federal or state character, [the] plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding" or the relationship between the claims "permits the conclusion that the entire action before the court comprises but one constitutional case." *Id.* at 725, 86 S.Ct. at 1138. A federal court, however, is not bound to try a non-federal claim just because it is closely related to a federal claim. Considerations of judicial economy, convenience, and fairness to the litigants should enter into the court's discretionary decision.

*Gibbs* involved non-federal claims against a party already before the court. In *Aldinger v. Howard,* the Court took up the question of pendent jurisdiction of a non-federal claim against a party not already properly before the court. The Court concluded that when a party is not already properly before the court then pendent jurisdiction exists only when the requirements of *Gibbs* are met and the statute that bestows federal jurisdiction does not preclude jurisdiction over the party against whom the non-federal claim is pressed. *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976).

The Court expounded on this two prong approach in *Owens Equipment.* Noting that Gibbs had "delineated the constitutional limits of federal judicial power," the Court pointed out that a determination of constitutional power to hear a case did not end the inquiry. "Constitutional power is merely the first hurdle that must be overcome in determining that a federal court had jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Article III of the Constitution, but by Acts of Congress." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 371–72, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978). Beyond *Gibbs,* "there must be an examination of the posture in which the non-federal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular non-federal claim." *Id.* at 373, 98 S.Ct. at 2402, *quoting, Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422.

■ The court finds that the requirements for pendent jurisdiction are not satisfied in the present action. As noted above, the court, without deciding, assumes that the plaintiff has a claim against Defendant Board under the FTCA. The FTCA claim satisfies the *Gibbs* requirement that the federal claim be sufficient to provide subject matter jurisdiction.

Plaintiff fails, however, to satisfy another of the requirements set out in *Gibbs.* Plaintiff's federal claim against the Defendant Board and his non-federal claim against the Defendant Union do not arise from a common nucleus of operative fact. Plaintiff, himself, stresses that his claim against the Defendant Board is based on the negligent supervision of Hendrix and the negligent investigation of Sharp. The claim against the Defendant Union is based on the publication of an article in *The Remedy.* The only commonality between the two is that Hendrix conversed with a Union representative on October 19, 1982 about plaintiff and part of that conversation was quoted in the article. The conversation itself did not constitute negligent supervision as described by the plaintiff. According to the plaintiff, the negligent supervision occurred when Hendrix failed to inform plaintiff that he believed the plaintiff had a problem in dealing with other employees and failed to suggest ways to counteract

the problem. Also the conversation did not constitute the action against the Defendant Union. Plaintiff did not have a defamation action against the Defendant Union until it published the article. The same is true for Sharp. The Union complaints did instigate Sharp's investigation, but plaintiff does not allege that Sharp acted other than independently in conducting his investigation. Moreover, the Defendant Union's only connection appears to be that it mentioned the investigation in the article. Some of the participants and some of the events may overlap, but the operative facts that underlie the separate claims do not arise out of a common nucleus. This is certainly not a case where the plaintiff can not obtain complete relief without trying all his claims before the same tribunal. It is not obvious to this court that, barring jurisdictional obstacles, plaintiff could ordinarily be expected to try these claims together or that their relationship indicates that they constitute a single constitutional case.

A finding of lack of commonality of operative facts renders a discussion of the remaining requirements of pendent jurisdiction unnecessary. Likewise unnecessary is a determination of the propriety of venue in this district.

In line with the above discussion the court hereby

ORDERS that the FTCA action against defendants NLRB, Hendrix, and Sharp be dismissed without prejudice for plaintiff's failure to exhaust his administrative remedies. The court further

ORDERS that the libel action against defendants NLRB Union, NLRB Union, local 17, Jacoby, Fetsch, and McConnell be dismissed without prejudice for lack of subject matter jurisdiction.