**[J-98-2018][M.O. - Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| IN RE:  PETITION FOR ENFORCEMENT OF SUBPOENAS ISSUED BY THE HEARING EXAMINER IN A PROCEEDING BEFORE THE BOARD OF MEDICINE | : : : : : : : : : | No. 35 EAP 2016<br><br>Appeal from the Order of the Commonwealth Court entered on 9/1/16 at No. 373 MD 2016 granting the Petition to Enforce Subpoenas |
| APPEAL OF:  M.R. | : | ARGUED:  December 5, 2019 |

*DISSENTING OPINION*

**CHIEF JUSTICE SAYLOR**                                **DECIDED:  August 20, 2019**

As the majority explains, Section 422.9(c) of the Medical Practice Act of 1985 states that the "[B]oard [of Medicine] is authorized to apply to Commonwealth Court to enforce its subpoenas."  63 P.S. §422.9(c).  Given that Appellee (Dr. DeMichele), and not the Board, commenced the proceedings in the Commonwealth Court, the majority reasons that the Commonwealth Court lacked subject matter jurisdiction.  *See* Majority Opinion, *slip op.* at 9.

In my view, however, the issue presented does not relate to subject matter jurisdiction, but rather, concerns *standing,* which "focuses on the party seeking to get his complaint before a . . . court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S. Ct. 1942, 1952 (1968).  Subject matter jurisdiction, on the other hand, connotes "the competency of the court to determine

controversies of the general class to which the case presented for consideration belongs." *In re Administrative Order No. 1–MD–2003*, 594 Pa. 346, 354, 936 A.2d 1, 5 (2007) (citations omitted). The Commonwealth Court possesses competency here, as reflected in the majority's discussion of several avenues per which that court's jurisdiction may be invoked to secure the enforcement of subpoenas issued from the administrative agency level. *See* Majority Opinion, *slip op.* at 10-11.

Since I believe that this case concerns standing, I note that such matters, in Pennsylvania, are generally deemed to be non-jurisdictional, and therefore, implicate the requirement of issue preservation. *See, e.g.*, *In re Nomination Petition of deYoung*, 588 Pa. 194, 201, 903 A.2d 1164, 1168 (2006) ("This Court has consistently held that a court is prohibited from raising the issue of standing *sua sponte*."). Certainly, the present matter is more complex, given that the governing standing requirement is embedded in a statute. Nevertheless, for good reason, I submit, the default position concerning statutory standing requirements should be that they are non-jurisdictional and waivable, consistent with our longstanding prudential standing requirements, unless the Legislature clearly expresses an intent to elevate their effect to jurisdictional status.

This approach is consistent with the direction in which the Supreme Court of the United States has been moving in recent opinions. As Justice (then Judge) Kavanaugh has explained:

> In recent years, the terminology of jurisdiction has been put under a microscope at the Supreme Court. And the Court has not liked what it has observed -- namely, sloppy and profligate use of the term "jurisdiction" by lower courts and, at times in the past, the Supreme Court itself. These recent Supreme Court opinions have significantly tightened and focused the analysis governing when a statutory requirement is jurisdictional.

*Grocery Mfrgs. Ass'n v. EPA*, 693 F.3d 169, 183-84 (D.C. Cir. 2012) (Kavanaugh, J.,

dissenting), *cited with approval in Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

572 U.S. 118, 128 n.4, 134 S. Ct. 1377, 1387 n.4 (2014).[1]

As part of this reexamination, the Supreme Court has established the following

standard:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515, 126 S. Ct. 1235, 1245 (2006); *see also*

Dodson, *Jurisdiction and Its Effects*, 105 Geo. L.J. at 626 (explaining that "a federal

court confronted with a question of jurisdictionality must consider, using textual and

contextual cues, whether Congress has clearly stated that the limit at issue is

jurisdictional"). I find this approach to be well-reasoned and would adopt it here.[2]

---

[1] *See also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S. Ct. 1003, 1010 (1998) ("'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.'" (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)). *See generally* Scott Dodson, *Jurisdiction and Its Effects*, 105 Geo. L.J. 619, 619-21 (2017) (explaining that "[j]urisdiction is experiencing an identity crisis" and "[t]he cracks in jurisdictional theory and doctrine have begun to expose themselves").

[2] Along these lines, the following commentary harmonizes closely with my thoughts:

> [P]urely formalist approaches to characterization doctrine -- insistence on bright-line rules for distinguishing . . . jurisdictional from nonjurisdictional rules -- are ill advised. A functional and incremental approach to legal characterization is not just theoretically sound, but also practically necessary for stable, workable law in this area.

Karen Petroski, *Statutory Genres: Substance, Procedure, Jurisdiction*, 44 Loy. U. Chi. L.J. 189, 190 (2012). Since, however, "habits of legal characterization are pervasive (continued…)

Responding to my position, the majority stresses that the Commonwealth Court is not a court of general jurisdiction. *See* Majority Opinion, *slip op.* at 14 n.7. But the federal courts are not courts of general jurisdiction either, *see Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S. Ct. 2396, 2403 (1978) ("It is a fundamental precept that federal courts are courts of limited jurisdiction."), which is why I consider the Supreme Court of the United States' progressive reevaluation of jurisdictional considerations to be pertinent here. The concern of that Court is with not routinely elevating the many and various prescriptions found within statutes -- such as standing requirements and ordinary claims processing rules -- to jurisdictional status in the absence of a clear legislative mandate. And I find the Supreme Court's reasoning and approach to be quite persuasive in the present context.

Again, to me, in the simplest terms, the subject matter in this case is the enforcement of subpoenas, and the statutory specification concerning who may bring the action is a matter of standing. After examining the textual and contextual cues, I find no evidence that the Legislature intended to curtail the jurisdiction of the Commonwealth Court relative to such enforcement.

Moreover, there should be avenues available for respondents in professional licensing disciplinary cases to seek enforcement of subpoenas in the Commonwealth Court.[3] One set of commentators captured the central reasoning as follows:

---

(…continued)
and internalized," *id.* at 240, it seems that concomitant changes will continue to suffer from fits and starts. *Compare* Majority Opinion, *slip op.* at 9-15, *with In re Roca*, 643 Pa. 585, 613 n.17, 173 A.3d 1176, 1193 n.17 (2017) ("We observe . . . that jurisdictional questions may involve issues that go beyond whether the controversy at hand falls into a general category.").

[3] Although the General Assembly has invested the courts of common pleas with appellate jurisdiction over certain determinations by Commonwealth agencies, *see* 42
(continued…)

> Where an administrative agency has issued a subpoena at the request of a party, and the subpoenaed witness has refused to appear, a problem of enforcement presents itself. The normal procedure is appeal to the courts for an order implementing the subpoena -- violation of the order then being punishable as contempt of court. The difficulty lies in the fact that most statutes creating administrative agencies confer the right to appeal for enforcement only upon the administrative body. But if the agency has power to subpoena on behalf of the party, it would seem that a court should hold that *the agency has* both the right and *the duty to appeal for enforcement* of subpoenas so issued.

Notes and Legislation, *Subpoenas and Due Process in Administrative Hearings*, 53 HARV. L. REV. 842, 849 (1940) (emphasis added).

Consistent with these observations, I suggest that a respondent in a professional disciplinary proceeding should be allowed to move for the licensing board to commence enforcement proceedings in the Commonwealth Court.[4] Should the board decline to do so, the respondent should be permitted to attempt to perfect an interlocutory appeal, either as of right under the collateral order doctrine where applicable, *see* Pa.R.A.P. 313, or permissively. *See* 42 Pa.C.S. §702(b); Pa.R.A.P. 312 & Ch. 13. Personally, I

---

(…continued)
Pa.C.S. §933(a)(1), these courts do not have jurisdiction over appeals in professional licensing disciplinary matters. *See id.* Rather, as the majority explains, appellate jurisdiction lies in the Commonwealth Court. *See* Majority Opinion, *slip op.* at 10 (citing 42 Pa.C.S. §763(a) (final orders)); *see also id.* §702(a) (interlocutory orders).

[4] I say "the board," because technically there is no statutory authorization for hearing examiners to proceed before the Commonwealth Court, *see* 63 P.S. §2203(c); whereas, the Board of Medicine, at least, does have such authority. *See id.* §422.9(c). Accordingly, if difficulties with enforcement are anticipated, it would be preferable to secure a subpoena through the licensing board, rather than from a hearing examiner.

would take a dim view of a licensing board that would refuse to uphold its own commands and the dignity of its office, absent substantial justification.[5]

A licensed professional subject to disciplinary action should enjoy the prerogative to secure subpoenas for witnesses and documents reasonably necessary to a defense. *Accord* Notes and Legislation, *Subpoenas and Due Process in Administrative Hearings*, 53 HARV. L. REV. at 850 (discussing "the serious consequences attendant upon the revocation of a license to practice a profession"). It seems to be just as clear that a reasonable avenue for enforcement should be available to such a respondent. Ultimately, of course, the merits determination will turn upon a balancing of any privileges that may be held by the subpoena's recipient against the interests of the respondent.

Here, however, there is no need to proceed on such a circuitous route, since there was never any objection lodged to Appellee's standing to pursue an enforcement action in the Commonwealth Court. In such circumstances, I respectfully differ with the majority's determination that subject matter jurisdiction is implicated such that *sua sponte* invocation of a statutory standing requirement is appropriate. And there would seem to be no question that Appellee is aggrieved by the lack of enforcement of subpoenas for purposes of the ordinary prudential standing requirements, which, in any event, have been waived.

_____

[5] Another possibility is that the recipient of the subpoena might petition to quash. If such a motion is granted, again, an interlocutory appeal might be justified on the above theories. I would also think that a board would take a disfavored view of a subpoena recipient who simply refuses to honor the subpoena without advancing substantial justification via a motion.

As a caveat, I note that several of the recipients of the subpoenas in this case are out-of-state residents, and a different analysis may apply to them given jurisdictional considerations and the potential applicability of the laws of another state.

Accordingly, I respectfully dissent and would proceed to the merits of the substantive questions presented by Appellant.