Albert Joel **SHEPARD**, Plaintiff

v.

John T. **STIDHAM**, an employee at the Maxwell Air Force Base Federal Prison Camp and a member of the Classification Committee; Earl J. Jones, a physician's assistant assigned to said Federal Prison Camp and a member of the Classification Committee; Jim Fleagle, individually and as Chairman of the Classification Committee of the Maxwell Air Force Base Federal Prison Camp; Terry Stigall, individually and as a member of the Classification Committee, etc.; and United States of America, Defendants.

Civ. A. No. 79–443–N.

United States District Court,
M. D. Alabama, N. D.

Dec. 8, 1980.

---

Alvin T. Prestwood, Claude P. Rosser, Jr., Montgomery, Ala., and Byrd, Carter & Smith, Rufus R. Smith, Jr., Dothan, Ala., for plaintiff.

Barry E. Teague, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., for defendants.

## OPINION

HOBBS, District Judge.

The cause now before the Court arises out of incidents occurring while plaintiff was incarcerated at Maxwell Air Force Base Federal Prison Camp. Plaintiff has brought suit against the United States and certain individual federal employees for alleged violations of his rights under the Fifth and Eighth Amendments to the United States Constitution and for negligent treatment during the course of his incarceration at Maxwell Federal Prison Camp. The factual background of this dispute is crucial to its resolution and is therefore considered in some detail.

## FINDINGS OF FACT

Plaintiff Albert Joel Shepard suffered from an abnormal heart condition from the time of his birth. At the time the heart condition was discovered, when Shepard was only three or four years of age, several doctors made recommendations as to his future treatment. They agreed that open heart surgery was indicated. Because of Shepard's financial condition, however, he did not go forward with any recommended procedures regarding his heart condition prior to his imprisonment at Maxwell Federal Prison Camp at age twenty–seven.

During the years prior to his imprisonment, plaintiff testified that he suffered from headaches, nausea, shortness of breath and a general inability to endure long periods of physical exertion without periods of frequent rest. During the several years immediately prior to plaintiff's imprisonment, he worked as a mechanic in an automobile body repair shop; as a member of the machine maintenance crew in a manufacturing plant; and as a spray painter of equipment in another manufacturing concern. Plaintiff testified that while working in his automobile body shop he averaged more than forty hours per week. In addition, plaintiff engaged in automobile racing at local "drag strips." Plaintiff testified at trial that he could manage all of these tasks so long as he was able to "work at his own pace."

On June 20, 1977, plaintiff arrived at Maxwell Federal Prison Camp to begin serving an eighteen months' sentence for interstate transportation of stolen motor vehicles. On June 22, 1977, plaintiff received a routine physical examination from one of the defendants in this law suit, Earl J. Jones. Jones is not a doctor, but he received medical training while serving in the hospital corps of the United States Navy for many years.

During the course of his physical examination of plaintiff, defendant Jones discovered an abnormality in plaintiff's heart beat. Based on his observations and his conversation with plaintiff, Jones arranged for plaintiff to be examined by an Air Force doctor, Dr. Robert Kaufman. In addition, Jones advised plaintiff to return to the camp clinic should he experience any further problems with his heart condition, and classified plaintiff as "fit for regular duty." Jones testified at trial that such classification of an inmate was standard procedure pending a referral and report from Dr. Kaufman. Both Dr. Kaufman and Jones agreed that if Dr. Kaufman had placed limitations on the prisoner's activities after his examination of that prisoner, defendant Jones would have changed the prisoner's duty classification prior to the meeting of the Camp's Classification Committee. Defendant Jones based his assignment of plaintiff as "fit for regular duty" on the medical history supplied by plaintiff; the previous physical activities engaged in by plaintiff; Jones' examination of plaintiff, which included laboratory work and audio examination of plaintiff's heart beat; and finally and most importantly, on Dr. Kaufman's concurrence.

Dr. Kaufman examined plaintiff on June 24, 1977, less than four days after plaintiff's arrival at Maxwell. At no time prior to Dr. Kaufman's examination had plaintiff been assigned to any work duty within the prison system. Upon examination of plaintiff, Dr. Kaufman made the following observations:

> Pt states he was "born with a leaking heart valve" which, according to his doctor, got worse rather than improved—Says

he was never able to endure arduous activity such as sports, work etc. because of shortness of breath. Says he is moderately short of breath "all the time" but markedly so when he exerts himself.

> p. e. color good—skin warm & dry. Some pnumonic (?) left pre—cordium, but this is questionable. Heart rhythm & rate normal. loud systolic M [murmur] mitral area c [with] late secondary component. Murmur intensifies over pulmonic area where it is loud and blowing systolic. prob. needs cardiac evaluation.

At the time of this examination, Dr. Kaufman was aware of plaintiff's classification as "fit for regular duty," but he did not change this classification. Dr. Kaufman declined to place restrictions on plaintiff's physical activities because he felt plaintiff's work history indicated an ability to perform normal work assignments and because he felt confident that plaintiff would have the opportunity to inform prison officials of any problems connected with his work assignment should they arise and that these problems would be adequately dealt with by prison personnel. Dr. Kaufman also testified that he was quite familiar with the nature of most of the work details at Maxwell and of the supervisors' attitudes toward the inmates working on these details. His perception of the work situation made him confident that plaintiff would have no trouble regulating his work activity according to his own limitations.

As the report indicates, Dr. Kaufman also recommended that plaintiff be referred to another facility for further cardiac evaluation. Dr. Kaufman did not, however, specify at what point this further cardiac evaluation should be undertaken. Dr. Kaufman testified at trial that he did not consider plaintiff's further evaluation of an urgent or emergency nature.

On June 30, 1977, the Classification Committee of Maxwell Federal Prison Camp interviewed plaintiff for the purpose of determining his proper work assignment. The Classification Committee consisted of defendants Stidham, Fleagle, and Stigall. After reviewing plaintiff's case, the Classi-

fication Committee assigned plaintiff to a detail involving landscaping tasks around the Maxwell Air Force Base facility. In making this assignment, the Committee relied on the classification of plaintiff by Jones and Dr. Kaufman as "fit for regular duty."

During the course of the interview with the Classification Committee, plaintiff did not inform the Committee of his heart condition, although material on the plaintiff furnished to the Committee did reflect such condition. Defendants on the Classification Committee were aware of the nature of plaintiff's duties on the landscaping detail and did not consider them overly burdensome. The Committee nevertheless told plaintiff to report back to them if he experienced any difficulties in connection with his work on this detail. As will be discussed later in this opinion, plaintiff never complained to the Committee.

Shortly after June 30, 1977, plaintiff began to perform his assigned duties on the landscaping detail. Plaintiff told his supervisor, Scott Tolliver, that he had a "bad heart." Supervisor Tolliver evidenced concern about plaintiff's condition and directed plaintiff to work at his own pace and to take breaks from his work as frequently as he desired. Tolliver also told plaintiff to advise him immediately if any problems as to the performance of his duties should arise.

Plaintiff's initial duties on the landscaping detail consisted of operating a power lawn mower. The approximate hours of the detail were as follows: 8 to 9 a. m., work; 9 to 9:30 a. m., rest; 9:30 to 11 a. m., work; 11:15 through 12:15 p. m., lunch; 12:30 p. m. to 2:00 p. m., work; 2:00 to 2:30 p. m., break; 2:30 to 2:50 p. m., work and return to machine shop; 2:50 to 3:15 p. m., clean up machinery; 3:30 p. m., end of work day.

From June 30 to August 8, plaintiff performed his assigned tasks in a satisfactory manner, although he experienced, in his own words, "occasional pain and discomfort." Plaintiff made no complaint regarding his work assignment to any of the de-

fendants during this period. Plaintiff testified that he did take breaks as needed in addition to those taken by the other members of the work detail, but that he did not always feel that he could take a rest break because he wanted to be in an unexposed position when he rested.

On August 8, 1977, plaintiff experienced an episode of severe chest pain, dizziness, shortness of breath and nausea. Supervisor Tolliver immediately took plaintiff to the camp medical clinic. By the time plaintiff reached the clinic, he was no longer in distress. Defendant Jones examined plaintiff but detected no changes from the condition of plaintiff's heart noted during the examination on June 22. Defendant Jones recommended that plaintiff convalesce for the remainder of the day and continue his duties on the landscaping detail the next work day.

On the morning of the next work day, plaintiff reported as usual for his work assignment. However, Supervisor Tolliver escorted plaintiff to Stidham's office where he requested that plaintiff be reassigned to another detail. Stidham told plaintiff and Supervisor Tolliver that although he did not know of any other vacancies at that time, he would consider reassigning plaintiff. Plaintiff returned twice to defendant Stidham's office, but was informed each time by Stidham that no other jobs were available. Defendant Stidham told plaintiff he would contact him should reassignment become possible.

Plaintiff returned to the landscaping detail where Supervisor Tolliver reassigned him to the task of carrying a spray can containing diesel fuel, which the prison detail used as an anti–herbicide. Supervisor Tolliver considered the operation of the spray can the lightest work on his detail and assigned plaintiff to this task because of plaintiff's medical problems. Again plaintiff was instructed to take rest breaks as needed.

From the date of the August 8 seizure and subsequent examination of plaintiff by defendant Jones to September 14, plaintiff never brought any of his medical problems

to the defendants' attention. This failure to inform defendants of the problems plaintiff experienced during this period came despite repeated instructions ·by defendant Jones and the Classification Committee to alert them to any such trouble and despite the fact that plaintiff actually visited defendant Jones in the camp's medical clinic on August 18 to receive treatment for an unrelated medical problem, acne. During the course of this August 18 visit, plaintiff failed to mention in any way his heart condition or any problems associated with his work assignment.

On or about September 1, plaintiff began some educational courses which totally relieved him of any afternoon duties on the work detail.

On the morning of September 14, 1977, plaintiff was carrying out his assigned task of operating the spray can when he felt his heart "flutter." He became weak, short of breath, and then passed out. Supervisor Tolliver immediately carried plaintiff to the camp clinic where he was met by defendant Jones. After observing plaintiff's condition, defendant Jones ordered plaintiff to be taken immediately and directly to the emergency room at the Air Force hospital at Maxwell Air Force Base. He remained in this hospital for the next fifteen days.

On September 29, 1977, plaintiff was transferred to the Federal Prison System Hospital at the Federal Correctional Institution at Lexington, Kentucky, where he underwent an extensive program of cardiac evaluation. Doctors at FCI, Lexington, performed open heart surgery on plaintiff on November 8, 1977. The operation was a success. In the words of one of plaintiff's own expert witnesses, the surgery "essentially cured him." In addition, all medical opinion agrees that the strain which plaintiff experienced during the course of his work activity at Maxwell did not cause plaintiff's heart condition to worsen or deteriorate. On the contrary, the work activi-

ty actually caused a cardiac evaluation sooner than would have occurred otherwise, with consequent corrective surgery.

## II. CONCLUSIONS OF LAW

Plaintiff has asserted claims based on the negligence of prison officials, as well as violations by those officials of plaintiff's rights secured by the Fifth and Eighth Amendments to the United States Constitution. Because resolution of plaintiff's negligence count will go a long way toward disposing of plaintiff's constitutional claims, the Court proceeds first with a discussion of plaintiff's claim for damages for negligent mistreatment at the hands of prison officials.

### A. Tort Claim

The question of which parties are being sued under which claims and upon what basis subject matter jurisdiction of this Court rests is not altogether clear from plaintiff's thrice–amended complaint and his four trial and post–trial briefs. Plaintiff asserted his tort claim for the first time in his third amended complaint, filed in this Court on June 24, 1980.[1] It is not clear from a reading of plaintiff's third amended complaint whether plaintiff is suing only the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., or whether he is also attempting to bring separate tort actions against the individual defendants.

From plaintiff's third amended complaint, it appears that plaintiff seeks damages on his negligence claim from both the United States and the individual defendants. However, plaintiff asserts only the Federal Tort Claims Act as the basis for this Court's jurisdiction over the negligence claim against the individual employees. Since it is beyond dispute that the Federal Tort Claims Act confers jurisdiction upon this Court only over claims against the United States, this failure to assert an independent jurisdictional base for a claim

---

1. Prior to the filing of this third amended complaint, the only defendants remaining in the law suit were Stidham, Jones, Fleagle and Stigall and one other individual subsequently dismissed by the Court upon motion by the defendants. The United States was not a party at the time plaintiff filed his tort claim.

against the individual defendants suggests that plaintiff intended only to assert an action against the United States on his negligence count. The fact that plaintiff alleges several times in his third amended complaint that the individual defendants were acting at all times "within the line and scope of their employment as employees of the United States" lends support to the conclusion that plaintiff intended only to bring suit against the United States on the negligence count.

The briefs submitted by plaintiff subsequent to this complaint do not eliminate this confusion. In his trial brief plaintiff submitted proposed findings of fact and conclusions of law. In his suggested judgment, he asked the Court to order that "the plaintiff recover of the United States of America the sum of $100,000.00 as damages for the injuries which he sustained as a result of the defendants' wrongful act and omissions." There is no suggestion at any point in plaintiff's proposed judgment that plaintiff take any recovery against the individual defendants on his negligence claim. In plaintiff's third and final post–trial brief, however, plaintiff argues that the action under the tort claim has always been against the individual defendants as well as the United States. Plaintiff concludes that he is "entitled to recover against the individual defendants irrespective of the FTCA."

Plaintiff's failure to distinguish adequately between a suit against the United States under the Federal Tort Claims Act and a suit based on the same theory of liability against individual employees raises at the outset a troubling question; i. e., upon what basis can the Court exercise subject matter jurisdiction over the claim against the individual defendants. As already noted, the Federal Tort Claims Act confers jurisdiction on the Court only over actions against the United States, not against individual employees. This question assumes added significance in this particular case because of the Court's conclusion, as set out below, that plaintiff's suit against the United States under the Federal Tort Claims Act is barred by 18 U.S.C. § 4126.

■ To resolve the question of subject matter jurisdiction over the tort claim against the individual defendants, the Court will treat plaintiff's negligence claims against Stidham, Jones, Fleagle and Stigall as pendent to plaintiff's constitutional claims against those same individuals. The Court has original subject matter jurisdiction over plaintiff's constitutional claims pursuant to 28 U.S.C. §§ 1331(a) and 1346(b).

The Court finds that its exercise of pendent jurisdiction in this case satisfies the standard set out in *Gibbs v. United Mine Workers*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Exercise of pendent jurisdiction in this case enables the Court to reach the merits of all of the issues raised by this thoroughly litigated law suit.

■ As to plaintiff's suit against the United States under the Federal Tort Claims Act, it is barred by 18 U.S.C. § 4126. Section 4126 authorizes the Federal Prison Industries, Inc. to use its funds to compensate inmates "for injury suffered in any industry or in any work activity in connection with the maintenance or operation of the institution where confined." 18 U.S.C. § 4126.

In *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966), the Supreme Court held that the exclusive remedy for a federal prisoner injured in the performance of an assigned prison task in a federal penitentiary lies under 18 U.S.C. § 4126. This exclusive remedy bars the inmate from bringing a suit against the federal government under the Federal Tort Claims Act. It is undisputed in this case that plaintiff's alleged injuries occurred in connection with his work activities at Maxwell Air Force Base.

The Fifth Circuit Court of Appeals has affirmed this exclusivity of remedy principle on several occasions, most recently in *Aston v. United States*, 625 F.2d 1210 (5th Cir. 1980). As with the case now before the Court, *Aston* involved a prisoner with pre–

existing medical problems. A deformity of the right leg required the plaintiff in *Aston* to walk with crutches. Aston protested his work assignment but was nevertheless ordered by a guard to stand on a stool and clean high shelves. Plaintiff Aston fell, was injured and brought suit under the Federal Tort Claims Act. The allegations made by Aston were largely identical to those made by the plaintiff in the instant case. Aston alleged that he was unfit for work, that the prison officials knew or should have known of his condition and that as a result of their negligence, he was injured on the job. The Fifth Circuit held that the district court properly dismissed the complaint for lack of jurisdiction. The *Aston* decision reaffirmed previous Fifth Circuit holdings that injuries sustained by federal prisoners while working at the prison are not compensable under the Federal Tort Claims Act: "*Demko* makes clear that Section 4126 is the *sole* remedy against the government where the injury is work–related, and the cause of the injury is irrelevant *so long as the injury itself occurred while the prisoner was on the job.*" *Aston, supra*, at 1211 (emphasis added)

Plaintiff contends that Section 4126 must be "an effective remedy" before it can be "raised to bar plaintiff's claim." Plaintiff argues that since his claim under Section 4126 was untimely filed and hence denied, he has no "effective remedy" other than the Federal Tort Claims Act. By "effective," plaintiff seems to mean that the injured inmate must succeed on his Section 4126 claim. The logic of plaintiff's argument is self–defeating. As defendants pointed out in their brief:

A determination that the denial of a prisoner's untimely inmate compensation claim removes the bar to suit under the Federal Tort Claims Act would effectively undermine the exclusive remedy holding of *Demko, supra*. It would render the *Demko* holding one of election of remedies.... Such a holding would allow prisoners to avoid the less desirable remedy of inmate accident compensation in favor of a damage remedy simply by delaying the filing of the compensation claim. This result would violate the clear mandate of *Demko* and its progeny that the Inmate Compensation Act is the prisoner's exclusive remedy.

■ Treating plaintiff's claims as including claims for negligence against the individual employees, the Court finds that none of the individual defendants were negligent in their treatment of plaintiff. The standard of care by which the Court must measure defendants' actions is essentially one of reasonableness. See *Cowart v. United States*, 617 F.2d 112 (5th Cir. 1980); *Watkins v. United States*, 589 F.2d 214 (5th Cir. 1979); *Vines v. Plantation Motor Lodge*, 336 So.2d 1338 (Ala.1976); *Standifer v. Pate*, 291 Ala. 434, 282 So.2d 261 (1973). The Court concludes that all of the defendants exercised reasonable care in their treatment of plaintiff.

This opinion has detailed the treatment of plaintiff by these defendants. Without repeating these facts, the Court notes that all of the defendants had a right to rely on the medical judgment of Dr. Kaufman as to the work activity suitable for plaintiff. Plaintiff has not charged Dr. Kaufman with negligence in his recommendation that plaintiff be assigned to "regular work" or in his view that there was no urgency in transferring plaintiff for further cardiac evaluation. Dr. Kaufman reaffirmed in his trial testimony that in his opinion plaintiff was capable of performing "regular work" with the understanding that plaintiff would communicate any difficulty occasioned by his heart condition and would have corrective action taken if needed. Plaintiff has submitted the deposition of two other doctors who question the medical view that plaintiff was able to do "regular work," but this medical opinion was not available to the defendants when they acted in reliance on Dr. Kaufman's medical opinion.

The Court does not reach the issue of damages in this case, but notes that plaintiff has received surgery for a heart condition with excellent results. No one suggests that plaintiff's work brought on the condition which required surgery. No one

suggests that plaintiff has not benefitted greatly from the surgery which was provided to him because of his status as a prisoner.

For all of these reasons, plaintiff's claim for an award of damages based on the negligence of defendants should be denied.

B. *Constitutional Claims*

 It must follow that if defendants' conduct did not constitute negligence, it likewise did not amount to an Eighth or Fifth Amendment violation. The Supreme Court's decision in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), requires that in order to establish an Eighth Amendment violation, the plaintiff must show "deliberate indifference to serious medical needs" on the part of prison officials. This Court's conclusion that defendants acted reasonably in their treatment of plaintiff makes further inquiry as to possible Eighth Amendment violations unnecessary. *Estelle,* and the cases decided under its standard, make clear that defendants' conduct in this case falls far short of constituting a violation of plaintiff's Eighth Amendment rights. See, for example, *Fiedler v. Bosshard,* 590 F.2d 105 (5th Cir. 1980).

Likewise, this Court's findings as to the reasonableness of the defendants' actions answer plaintiff's argument that defendants acted in an arbitrary and capricious manner, thereby violating plaintiff's right to due process. The Court finds no such violation of plaintiff's right to substantive due process in this case.

For all of these reasons, the Court concludes that plaintiff's claim should be denied. A judgment will be entered in accordance with this opinion.