**Willard WOOTEN, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, et al., Defendants-Appellees.**

**No. 86–5086.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1987.

Decided Aug. 4, 1987.

---

William Hoskins, Jackson, Kelly, Williams, Palmore, Lexington, Ky., Daniel G. Grove (argued), Lewis J. Paper (argued), Keck, Mahin & Cate, Washington, D.C., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Charles L. Dause (argued), for defendants-appellees.

Before KENNEDY, JONES and NORRIS, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Willard Wooten appeals from the district court's order setting aside the judgment entered in his favor and dismissing his complaint brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq. (1982). For the reasons set forth below, we reverse the district court's order in part and remand the case for further proceedings.

Wooten was incarcerated at the Federal Correctional Institution ("FCI") in Miami, Florida, on October 16, 1981. Five years prior to this, Wooten had suffered a back injury that was later diagnosed as a herniated disc. Wooten's physician at the time of the injury recommended that he avoid lifting heavy objects, rest when needed, and take aspirin to relieve pain. Upon his entry into the federal prison system at Miami, Wooten informed prison officials of his history of back trouble and advised them that he was unable to lift heavy objects. He was given a physical examination, which revealed the presence of a herniated disc. Shortly thereafter, prison officials received a report from Wooten's personal physician confirming his serious back condition. As a result of this condition, Wooten was assigned to perform light work.

On January 25, 1982, Wooten was transferred to FCI Ashland in Kentucky. Federal prison policy mandates that an inmate's medical records accompany him whenever he is transferred. Contrary to this policy, Wooten's medical records were never sent to FCI Ashland. The records were later discovered in the dead files at FCI Miami in August of 1985, a short time before the trial in this case commenced. Upon his arrival at FCI Ashland, Wooten was given an initial medical screening as required by prison policy. The screening was performed by a physician's assistant. Wooten informed the physician's assistant of his back trouble, but was nonetheless cleared for normal duty and assigned to work as an orderly. Wooten and two other orderlies were responsible for keeping a dormitory unit clean. His duties included cleaning floors, walls, and bathrooms. In order to carry out these duties, Wooten had to lift heavy weights, as well as bend and twist. These activities aggravated his back condition to such a degree that he began to experience pain radiating from his lower back down to his left leg. He experienced difficulty in walking due to this pain.

Bureau of Prison regulations require that each inmate be given a complete physical examination within two weeks of his arrival at a new institution. Such an examination is not required if the inmate has had an examination within one year of his transfer. This exception does not apply if an inmate has had medical problems. In Wooten's case, the regulations required the authorities at FCI Ashland to conduct a complete physical examination and take a full medical history not later than February 24, 1982.

When Wooten arrived at FCI Ashland, he reported his history of back trouble to prison officials. He also reported that he suffered from a perforated ear drum. Despite their knowledge of these medical problems, prison officials did not schedule Wooten for a complete physical examination at that time or at any time in the near future. In February 1982, Wooten visited the Outpatient Department at the prison, again reported his history of back trouble, and asked to see a physician. This request was not honored despite prison regulations that state that an inmate's request to see a doctor must be met. Wooten was not given the required examination until July 23, 1982, more than five months after his transfer.

Prison regulations further required that each facility conduct a monthly review or audit of inmate medical records to insure their completeness and accuracy. The regulations also required that each facility maintain a "problem list" identifying the inmate's chief medical problems. The list is used to advise medical personnel of an inmate's problems quickly and to record the inmate's treatment and progress. Neither of these regulations was followed at Ashland. Consequently, there was no periodic review of Wooten's records or medical problems.

Wooten's physical condition worsened significantly in late June. On June 21, 1982, he requested to see Dr. Susan Echterling, Chief of Health Programs at FCI Ashland, and an appointment was scheduled for July 2, 1982. The doctor failed to keep this appointment, and Wooten did not see her until July 15, 1982. At that time, Dr. Echterling examined Wooten, prescribed medication for his ear problem, placed him on light duty status to help ease the problems with his back, and scheduled him for a physical examination. During her examination, Dr. Echterling did not perform a neurological examination on Wooten, despite the fact that he informed her of his history of back trouble. Neither did she inquire into Wooten's medical history or order x-rays.

On July 23, 1982, Wooten was finally given the physical examination that he should have received upon his arrival at Ashland in February. The examination was performed by a physician's assistant. In instances where a physical examination is performed by a physician's assistant, prison regulations require that a physician countersign the examination report. However, no physician countersigned or reviewed the physician's assistant's report. Following the examination, the physician's assistant ordered that Wooten be placed on light duty status. Despite this order and a similar earlier order by Dr. Echterling, Wooten continued in his duties as an orderly.

Wooten's condition continued to worsen and he continued complaining to medical officials and the warden. On August 10, 1982, Wooten wrote a letter to the warden as a "last plea" for "immediate help." Two days later, Wooten was again seen by Dr. Echterling who reported that his back pain had worsened "dramatically." The doctor also reported that Wooten's medication could no longer relieve the pain.

In late August 1982, Wooten was flown to the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, for treatment of his ear problem. On November 5, 1982, surgery was performed to remedy the problem. Prior to this surgery, Wooten was referred to Dr. Karl Albaeck, a neurosurgeon employed by the Bureau of Prisons, for treatment of his back problem. Dr. Albaeck performed a complete examination and concluded that Wooten was suffering from a herniated disc reflecting degenerative disc disease. Dr. Albaeck pre-

scribed a conservative course of treatment, which included a diet, physical therapy, light work duty involving no lifting, and medication as needed. Wooten followed the physical therapy regimen for three months, but then chose to discontinue this treatment after concluding that it was not aiding him.

During his stay at Springfield, Wooten was assigned to jobs in the clothing room and as an elevator operator. These jobs were not strenuous and required no bending, twisting, or heavy lifting. Nonetheless, Wooten's physical condition continued to worsen and he eventually became unable to walk without pain. On March 2, 1983, Dr. Albaeck issued him a wheelchair to help him in moving about the institution. Dr. Perlmutter, Wooten's medical expert, testified that walking of any kind could produce considerable pain for a person in Wooten's physical condition. The parties stipulated that Wooten had to walk between 57 and 308 yards to and from his jobs, and between 142 to 196 yards to and from the dining room each day during his stay at Springfield.

Because of his physical condition, Wooten requested that he be sent to FCI Lexington, which had medical facilities, or that he be allowed to receive treatment outside the prison system. Both requests were denied and Wooten was instead returned to FCI Ashland on March 15, 1983. Upon his return, Wooten was assigned to work in the clothing room. Wooten was required to walk about 142 yards in order to go to work. He also had to walk 82 yards in order to go to the dining room. On March 16, 1983, Dr. Albaeck advised Dr. Echterling by telephone that Wooten should not be required to walk more than 50 to 100 yards. Although Dr. Echterling was well-aware that Wooten had serious back trouble, she made no effort to check to see how far he would have to walk to fulfill his job responsibilities and attend to other daily routines. Furthermore, she issued no directive limiting Wooten's walking and declined to allow him the use of a wheelchair.

Wooten continued to complain that walking was painful, that his left leg was becoming lame, that he was walking with a limp, and that he desperately needed medical help. Wooten's unit manager advised both Dr. Echterling and the assistant warden that Wooten was in no condition to work and should be transferred from FCI Ashland. No attempt was made to have Wooten transferred. Instead he was directed to "do the best he could."

On April 7, 1983, Wooten was taken to the infirmary on a stretcher, unable to walk, and in great pain. He was examined by a physician's assistant, put on lay-in status for seven days and given pain medication. He was eventually given crutches and allowed to return to his unit. On April 14, 1983, he returned to the infirmary and his lay-in status was extended until April 22. When this status ended, he was told to report to work. He refused to do so, claiming that his back pain was still disabling. He asked to see a physician and a call was made to Dr. Echterling who refused to see him. Finally, Wooten was taken to the infirmary, where he was examined by a physician's assistant. The physician's assistant refused to excuse Wooten from work, and instead advised him to come back for a scheduled appointment with Dr. Echterling for consideration of a renewal of his lay-in status. When Dr. Echterling finally saw him, she refused to renew his lay-in status. Wooten continued to refuse to return to work and, as a result, was placed in administrative detention. Following a hearing on April 29, 1983, Wooten was found guilty of violating prison rules and placed in solitary confinement.

By this time Wooten had retained counsel to represent him in his efforts to obtain adequate medical care. After a meeting with Wooten's counsel on May 11, 1983, the Director of the Federal Bureau of Prisons ordered that Wooten be transferred to a hospital ward at FCI Lexington and examined by an orthopedic consultant upon his arrival there. Wooten remained at FCI Lexington, confined to a wheel chair and convalescing in bed, until his release from prison on February 1, 1984. Wooten's condition did not change while he was at Lexington; he was still unable to walk unaided without pain at the time of his release.

Surgery was performed following his release, and he recovered well and is now able to walk without pain. The surgery left him with a twelve percent permanent partial disability.

On January 24, 1983, Wooten filed a *pro se* complaint in the United States District Court for the Eastern District of Kentucky, alleging that prison officials at FCI Ashland were denying him medical care for his back problem and perforated ear drum. He further alleged that he was being forced to work despite his medical problems. On January 27, 1983, Wooten filed a second *pro se* complaint against prison officials at the United States Medical Center in Springfield, Missouri. This complaint, which was filed in the United States District Court for the Western District of Missouri, alleged that officials at Springfield had failed to provide him with adequate medical care. The district court dismissed this latter action without prejudice because Wooten had not exhausted his administrative remedies prior to filing suit.

Wooten, still acting *pro se*, refiled his complaint in the United States District Court for the Western District of Missouri, again alleging inadequate medical care. The court again dismissed the complaint without prejudice, and advised Wooten that if he were seeking relief for negligent medical treatment, he first had to file his claim administratively pursuant to the FTCA. Wooten then retained counsel for the first time to prosecute his pending suit in the district court in Kentucky. He also filed a claim with the United States Department of Justice under the FTCA alleging negligent medical care. The claim was denied on September 9, 1983.

By an order dated September 21, 1983, the district court in Kentucky granted Wooten's motion to amend his complaint to add the United States as a defendant and to request relief under the FTCA. The court also granted Wooten's motion to include as defendants those prison officials who had been defendants in the Missouri action. The case went to trial in August 1985. At the conclusion of trial, an advisory jury found that the government had been negligent in providing medical care to Wooten and recommended that the court order judgment in Wooten's favor in the amount of $500,000. On September 12, 1985, the district court entered judgment to that effect. In its conclusions of law, the court found that the government was liable for the negligence of its employees at FCI Ashland and Springfield Medical Center. The court specifically found negligence in the following respects:

1) The failure of employees at FCI Ashland to obtain Wooten's medical records from FCI Miami upon his arrival at Ashland.

2) The failure of the physician's assistant to review Wooten's initial medical intake sheet.

3) The failure of the FCI Ashland medical personnel to take a full history of Wooten's back trouble as soon as he arrived at Ashland and schedule him to see Dr. Echterling as soon as possible.

4) Assigning Wooten to a job prior to his seeing a doctor.

5) The failure of employees at FCI Ashland to have in place written guidelines and procedures for the operation of the medical department.

6) The failure to provide Wooten with a physical exam within two weeks of his arrival at Ashland as required by prison regulations.

7) The failure of medical personnel to maintain a proper problem list concerning Wooten's medical needs.

8) The failure to provide Wooten with an appointment to see a physician upon his request.

9) Dr. Echterling's failure to provide Wooten with diagnostic testing after learning of his back trouble.

10) The fact that officials at Springfield forced Wooten to walk unreasonable distances despite his back trouble.

11) The decision on the part of Springfield officials to return Wooten to FCI Ashland, a working prison, despite his documented medical problems.

12) The failure to follow medical limitations with respect to Wooten's walking after his return to Ashland.

13) The failure of FCI Ashland employees to accede to Wooten's reasonable requests for medical attention and for a transfer to a more suitable institution.

Following the district court's entry of judgment, the government moved to have the judgment set aside and Wooten's complaint dismissed, asserting for the first time that the court had no jurisdiction under the FTCA because Wooten's exclusive remedy was 18 U.S.C. § 4126 (1982), which provides compensation for inmates injured in the course of performing prison jobs. On December 6, 1985, the district court granted the government's motion, set aside the judgment, and dismissed Wooten's complaint. The district court reasoned that since Wooten's injuries were work-related, his exclusive remedy was Section 4126, and it was without jurisdiction to consider the complaint under the FTCA. Wooten now appeals from the district court's order.

## I.

Section 4126 authorizes the Federal Prison Industries, Inc., to use its funds to compensate inmates "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution where confined." In *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966), the Supreme Court held that Section 4126 is the exclusive remedy for a federal prisoner injured in the performance of an assigned task while in a federal penitentiary. Section 4126 serves as the exclusive remedy *only* when the injury suffered by the inmate is work-related. *See Thompson v. United States*, 495 F.2d 192 (5th Cir. 1974). Section 4126 is also the exclusive remedy when a work-related injury is subsequently aggravated by negligence and malpractice on the part of prison officials, *see id.* at 193, or when the injury stems from a negligent job assignment. *Jewell v. United States*, 274 F.Supp. 381 (N.D.Ga. 1967).

Similarly, Section 4126 provides the exclusive remedy where a prisoner with a pre-existing medical problem is subsequently injured in a work-related incident. *See Aston v. United States*, 625 F.2d 1210 (5th Cir.1980). The prisoner in *Aston* had a deformed right leg that required him to walk with crutches. Despite the deformity, Aston was assigned to a prison job and ordered by a guard to stand on a stool and clean high shelves. He fell from the stool, was injured, and brought suit under the Federal Tort Claims Act. Aston alleged that he was unfit for work, that the prison officials knew or should have known of his condition, and that as a result of their negligence, he was injured on the job. The Fifth Circuit held that the district court had properly dismissed the complaint for lack of jurisdiction. The court stated that "*Demko* makes clear that § 4126 is the sole remedy against the government where the injury is work-related, and the cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." *Id.* at 1211. *See also Shepard v. Stidham*, 502 F.Supp. 1275 (M.D.Ala.1980).

On appeal Wooten contends that the district court erred in setting aside its original judgment because his injuries were not work-related. He argues that there was no finding by the district court of any specific time and place where he was injured as a result of a work-related accident at FCI Ashland. He contends that his injuries were caused by the negligence of prison officials who failed to give him proper medical treatment and who ordered him to work and walk long distances in spite of his medical problems.

The district court applied the following reasoning in reaching its decision to set aside its judgment. One of Wooten's allegations in his complaint was that he was forced to undertake strenuous labors he was medically unfit to perform and these labors further aggravated his pre-existing permanent back disability. The court made findings of fact and found that Wooten had in fact been forced to perform labor he was medically unfit to perform. The court then found that "Wooten's pre-existing back

problem was aggravated by the bending, twisting, and heavy lifting he was made to perform as an orderly." The court thus concluded that the aggravation of a pre-existing medical problem constituted a work-related injury which was not compensable under the FTCA.

We detect no error in this finding. The relevant injury is the aggravation of the pre-existing back problem caused by the prison job Wooten was required to perform. Although Wooten is correct that his original injury was not work-related, this is of little assistance to him. In our view, the aggravation of the pre-existing medical problem and the medical problem itself constitute two separate injuries. Thus, to the extent that Wooten sought relief under the FTCA for the aggravation of his pre-existing back problem as a result of his job assignment, his complaint is barred by *Demko.*

This holding, however, does not completely resolve this case. Our review of Wooten's amended complaint convinces us that he was claiming much more than that his pre-existing back problem was aggravated as a result of his performing a prison job for which he was unfit. He also alleged a denial of adequate medical care. In its opinion setting aside the judgment, the district court completely disregarded this allegation and instead focused entirely on Wooten's allegation regarding his job assignment. We find this to be error.

In its original opinion, the district court found that Wooten had proved negligence on the part of prison officials. Most of these acts of negligence related to the failure of prison officials to give Wooten adequate medical care. These findings are amply supported by the evidence. Indeed, the record paints a detailed picture of negligence on the part of prison officials. These officials violated several prison regulations, repeatedly refused to heed Wooten's complaints, forced him to perform nonwork-related tasks that worsened his condition and caused him considerable pain and suffering, and failed to give him adequate medical care. The government now seeks to completely avoid responsibility for the actions of these officials by hiding behind Wooten's failure to file suit under Section 4126. The government cannot completely avoid its responsibility to Wooten on this basis. The injuries suffered by Wooten are not all work-related, and he may recover under the FTCA for those injuries that are not work-related.

We are reluctant to attempt to separate Wooten's work-related injuries from his nonwork-related injuries on the record before us. We therefore remand the case to the district court with instructions to determine which of Wooten's injuries are nonwork-related. Upon making such a determination, the district court should adjust Wooten's award of damages accordingly.

## II.

Wooten also contends that the district court should have estopped the United States from challenging the court's jurisdiction once judgment had been entered in his favor. Wooten argues that since the government's motion was based on the construction of a new theory of already known facts, rather than a new law, new development, or the discovery of a concealed fact, it should be estopped from claiming a lack of subject matter jurisdiction.

It is well-settled that a party may raise a challenge to the subject matter jurisdiction of a court at any time before a case is finally decided. *See* Fed.R.Civ.P. 12(h)(3); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 16–19, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951). Since federal courts are courts of limited jurisdiction, jurisdiction that is otherwise lacking cannot be conferred by consent, collusion, laches, waiver, or estoppel. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 2, 57 L.Ed.2d 274 (1978). By providing Section 4126 as the exclusive remedy for inmates who suffer work-related injuries, Congress has signalled its lack of consent to be sued under the FTCA for such injuries. Absent a waiver of sovereign immunity by the United States, a court cannot apply the doctrine of judicial estoppel. Thus, to the extent that Wooten's complaint sought relief for

work-related injuries, the district court was without subject matter jurisdiction to consider the complaint under the FTCA. However, as discussed *supra,* Wooten's complaint also alleged claims that were compensable under the FTCA. The district court therefore erred in holding that it was without jurisdiction to consider these claims. Accordingly, we AFFIRM in part and REVERSE in part the district court's order setting aside the original judgment. The court's order was proper insofar as it related to the work-related injuries. However, it was improper with regard to Wooten's other claims.

For the reasons set forth above, we REVERSE the district court's order in part and REMAND this case for further proceedings consistent with this opinion.