**GRAMERCY 222 RESIDENTS CORP.,**
Richard Bloch, and Steven
Muller, Plaintiffs,

v.

**GRAMERCY REALTY ASSOCIATES,**
Edward Frankel, Samuel Frankel, Jules
Jacobs, Herman Rubinstein, Eugene
Schweitzer, Barbara Schweitzer, Absalom Kofman, Stanley R. Rosenberg, Rokoff Realty Corp., Bernard Rothzeid &
Partners, P.C., Abraham Joselow, Procida Construction Corp. and Reuben
Miller, Defendants.

No. 83 Civ. 6135 (GLG).

United States District Court,
S.D. New York.

Aug. 8, 1984.

Ross & Cohen, New York City, for plaintiffs; Frederick Cohen, Charles Fastenberg, New York City, of counsel.

Wilson, Elser, Edelman & Dicker, New York City, for defendant Bernard Rothzeid & Partners, P.C.; Stephen A. Postelnek, Richard S. Oelsner, Julianna Ryan, New York City, of counsel.

Kaming & Kaming, New York City, for defendant Reuben Miller; Elizabeth C. Kaming, Joseph S. Kaming, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This suit arises from the conversion of a commercial loft building into a residential property owned by a cooperative corporation. The cooperative and two of its shareholders are suing numerous defendants (all of whom were, however tangentially, involved in the conversion of the property) for, *inter alia*, mail fraud, common law fraud, negligence, malpractice, breach of contract, and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (1982) ("RICO"). The Court's jurisdiction is invoked solely on the basis of RICO. The plaintiffs also contend that there is pendent jurisdiction over the state law claims and over those defendants who may be found not to have violated RICO.

Presently before the Court are motions by two of the fourteen defendants seeking dismissal of the RICO charges pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction); 12(b)(2) (lack of jurisdiction over the parties); and 12(b)(6) (failure to state a claim upon which relief can be granted). Once the RICO charges are dismissed, the movants assert, pendent jurisdiction is no longer available over either the state causes of action or the defendants who are not reachable under RICO.

The movants also request that the Court award attorneys' fees as permitted under Fed.R.Civ.P. 11.

For the reasons set forth below, the Court grants the defendants' motion to dismiss, but denies their motions for attorneys' fees.

## BACKGROUND

The cooperative corporation, Gramercy 222 Residents Corp., and two of its shareholders, Richard Block and Steven Muller (hereinafter referred to collectively as "the Residents") filed a complaint against a number of defendants,[1] including the two

---

1. Because only two of the defendants have made this motion, the names and the roles of the other defendants are not relevant here.

However, the Court notes that also named as defendants are Gramercy Realty Associates, the

movants in the instant proceeding, Bernard Rothzeid & Partners, P.C. ("Rothzeid"), the architectural firm that inspected the building before renovation and whose report was included in the selling prospectus for the cooperative, and Reuben Miller ("Miller"), the architect who inspected and approved the work of the construction firm that renovated the building.

In a nutshell, the Residents complain that, after the creation of the cooperative corporation and the purchase of their shares, they discovered that there were extensive problems with the building's structure and components, that some substandard materials had been used in the remodelling work, and that they had been deceived as to the tax status of the cooperative. The Residents allege that the failure by Rothzeid and Miller to discover some of these allegedly defective conditions constitutes mail fraud,[2] common law fraud, negligence, professional malpractice, breach of contract,[3] and RICO violations. As a result of these failures, the plaintiffs seek $2.5 million in actual damages to cover the amount they claim has been or will be spent to repair the allegedly defective conditions in the building. Under RICO, this amount would be trebled to $7.5 million and the plaintiffs would be eligible for attorneys' fees as well.

Before turning to a discussion of the law, the Court notes that the complaint in this case has already been dismissed once upon similar motions made by Rothzeid and Miller. *Gramercy 222 Residents Corp. v. Gramercy Realty Associates*, No. 83–6135 (S.D.N.Y. Jan. 30, 1984) (Duffy, J.). In their amended complaint, the plaintiffs have done little more than add pro forma language charging all of the defendants with mail fraud, thus laying what they hoped would be a proper foundation for the RICO complaint. Despite this effort to infuse new life into their RICO complaint, the amended complaint still falls far short of successfully stating a RICO cause of action.

## DISCUSSION

There are two basic problems with the plaintiffs' amended complaint. First, it fails to meet the requirements needed to state a claim under RICO. Second, it fails to allege a RICO-type injury that goes beyond the injuries suffered as a result of the predicate acts.

A. *The Plaintiffs Fail to Allege the Elements of a RICO Cause of Action*

To make out a RICO cause of action, a plaintiff must "allege the existence

---

general partnership that purchased and converted the building; the eight individual partners in Gramercy Realty Associates; a real estate firm in which two of the partners are principals; the engineer who wrote the specifications for the conversion; and the construction firm that did the remodelling work.

2. A complaint alleging nothing more than mail fraud would be insufficient to vest this Court with jurisdiction over the cause of action because there is no private right of action under the mail fraud statute. *See, e.g., Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1177–79 (6th Cir. 1979); *Austin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 570 F.Supp. 667, 669 N. 3 (W.D. Mich.1983).

One of the troubling aspects of the way the courts have interpreted RICO was noted by Judge Pollack, who explained that at the time RICO was enacted there was no private right of action under the mail fraud statute. However, by allowing the pleading of mail fraud as a predicate offense to invoke the civil remedies

available under RICO, it now appears that private parties may recover for their injuries as a result of acts of mail fraud. "It is implausible that Congress could have meant to alter this accepted rule to the extent of creating a right of action for treble damages [under the mail fraud act] without a single mention of such revolutionary consequence anywhere in the legislative history." *Moss v. Morgan Stanley, Inc.*, 553 F.Supp. 1347, 1361 (S.D.N.Y.), *aff'd in part, rev'd in part*, 719 F.2d 5 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, —— U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

3. All of these claims (except the mail fraud claims) are state law causes of action and, because there is no diversity of citizenship between the parties, this case would ordinarily not be before this Court. However, the plaintiffs also claim that all of the defendants participated in an "enterprise" that engaged in a "pattern of racketeering activity" and that the alleged mail fraud constitutes the two "predicate acts," thus allowing them to invoke federal jurisdiction under RICO.

of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983) (citing 18 U.S.C. & 1962(a)–(c) (1976)), *cert. denied sub nom. Moss v. Newman*, —— U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).[4]

In dismissing the original complaint, Judge Duffy stated: "Plaintiffs have clearly failed to allege the existence of elements 2 through 7." *Gramercy 222 Residents Corp. v. Gramercy Realty Associates, supra,* slip op. at 4. In the amended complaint, it appears that the plaintiffs may have corrected some of the deficiencies of the original complaint, but it is clear that they have failed to correct all of them, and for this reason the complaint must be dismissed. This opinion will focus only on two of the shortcomings of the complaint— that the plaintiffs failed to allege that Rothzeid and Miller invested in, maintained an interest in, or participated in a RICO enterprise, and that the plaintiffs failed to show how the activities of the enterprise affected interstate commerce.

**4.** A " 'pattern of racketeering activity' requires at least two acts of a racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (1982).

"Racketeering activities" are defined in 18 U.S.C. § 1961(1)(B) as including a number of crimes among which are mail fraud. The crimes listed in this section have become known as "predicate acts," the commission of which can trigger a RICO suit.

A RICO " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1982).

**5.** A " 'person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3) (1982).

### 1. There is an Insufficient Nexus Between the Defendants and the Enterprise

While the terms "person"[5] and "enterprise"[6] are defined in the RICO statute and have been extensively litigated, the question of how much involvement must be shown before a defendant will be deemed a participant in an enterprise is not so clear. In most cases, once the existence of an enterprise has been shown, there is usually no question whether the defendant has participated in the enterprise. However, this is not the case here.

There is little doubt that there was an "enterprise" within the meaning of 18 U.S.C. § 1961(4) (1982), because there was a group of "persons" (at least those who were partners in Gramercy Realty Associates) who were associated for a common purpose—the conversion of a commercial loft building into a residential cooperative corporation.[7] The question here is whether defendants Rothzeid and Miller were participants in the enterprise by virtue of their brief and limited relationship with the partnership that converted the building into a residential property. Based on the statutory language and case law, the Court finds that the acts committed by Rothzeid and Miller are not sufficient to make them participants in the enterprise.

**6.** *See supra* note 4.

**7.** Although RICO was intended as a weapon against organized crime, some courts have, nevertheless, found that a wide variety of legitimate businesses could be defined as RICO "enterprises" within the meaning of the statute. *See, e.g., Bennett v. Berg,* 685 F.2d 1053, 1060–61 (8th Cir.1982), *cert. denied sub nom. Prudential Insurance Co. of America v. Bennett,* —— U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Sedima S.P.R.L. v. Imrex Co.,* 741 F.2d 482 (2d Cir.1984) (noting that many "respected and legitimate 'enterprises' " have been subjected to RICO claims and that "the uses to which private civil RICO has been put have been extraordinary, if not outrageous.")

The relevant statutory language of RICO provides:

It shall be unlawful for *any person employed by or associated* with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs* through a pattern of racketeering activity or the collection of an unlawful debt.

18 U.S.C. § 1962(c) (1982) (emphasis added).

Rothzeid and Miller were obviously "employed by" the enterprise that was converting the building. But, just as obviously, they did not "conduct or participate, directly or indirectly, in the *conduct* of such enterprise's affairs." The relationship between Rothzeid and Miller and the enterprise can be measured in days or even hours. The defendants each performed a single act of inspecting the building (Rothzeid) or the work of the contractor (Miller). The plaintiffs do not allege that Rothzeid or Miller participated in the profits of the enterprise beyond the fees that they earned, or that they helped shape or direct the policies of the enterprise. Rothzeid and Miller were transient characters who cannot in any way be held responsible for the acts of the enterprise.

In considering how an enterprise and participation in it can be shown, the Supreme Court said, "[t]he enterprise is an entity, for the present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). To find an enterprise, the Court suggested, there must be "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *Id.*

Applying those definitions to the instant case, the Court finds that the "common purpose" and the "course of conduct" was the conversion of a commercial building into a residential one, and the sale of shares in it to potential residents. Rothzeid and Miller had no interest whatsoever in this "common purpose." Their only interest was in completing their inspections and getting paid for their work. Furthermore, there is no allegation whatsoever that Rothzeid and Miller were among those who were functioning together as "a continuing unit."

The facts in this case bear no resemblance at all to other cases in which the courts have found the defendants to be "participants" in an "enterprise." In *United States v. Mazzei*, 700 F.2d 85, 88 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983), the court found that a group of gamblers who worked together to organize and implement a "point-shaving" scheme involving basketball games were "participants" in an "enterprise." Simply put, there was a common purpose, a continuing unit, and profits derived through a "pattern of racketeering activity." *Id.* at 89. In *United States v. Stofsky*, 409 F.Supp. 609 (S.D.N.Y.1973), the court explained that the RICO statute required "a necessary connection between the person who would commit the enumerated predicate acts and the enterprise, and between the acts and that person's participation in the operations of the enterprise." *Id.* at 613. As indicated above, there is no such connection here. For this reason, the Court finds that the plaintiffs' amended complaint fails to meet the *Moss* requirement of showing that the defendants participated in a RICO enterprise.

### 2. There is an Insufficient Nexus Between the Enterprise and Interstate Commerce

There are only two allegations in the amended complaint that address the requirement that the alleged RICO enterprise have some effect on interstate commerce: (1) one of the partners in Gramercy Realty Associates is an architect licensed in New Jersey, and (2) some of the materials and supplies for the remodelling of the building, including the bathtubs, came from New Jersey.

These alleged connections with interstate commerce are, to put it charitably, de minimis. That one of the partners who con-

verted the building is an architect licensed in New Jersey is nothing more than a fortuity in no way affecting interstate commerce. That some of the building materials may have been delivered from New Jersey is also irrelevant, first, because there is no allegation that there were any irregularities in the purchase or delivery of the materials and second, because there is no showing that any of the materials that were purchased in New Jersey were in any way defective, or, for that matter, that these defendants had anything to do with the bathtubs.

For these reasons, the Court finds that the nexus with interstate commerce is too ephemeral and that the plaintiffs have failed to allege that the activities of the enterprise had any effect on interstate commerce.

B.  *The Plaintiffs Fail to Show a "RICO-Type" Injury*

The basis of the flood of "civil RICO" lawsuits that have engulfed the federal courts is the language of section 1964(c) which states: "Any person injured in his business or property *by reason of a violation of section 1962 of this chapter* may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c) (1982) (emphasis added). Obviously, the potential for treble damages and attorneys' fees is a powerful, if not irresistable, temptation to bring civil suits under RICO.

In an attempt to control the number of civil RICO cases, a number of courts have looked to the "by reason of" language of

the statute and the legislative history of RICO, and have concluded that damages sought under RICO must be the result not of the ordinary injuries resulting from the predicate acts themselves, but rather of "RICO-type" injuries that go beyond ordinary injuries.[8]  In this respect, RICO can be seen as akin to the antitrust laws which, the Supreme Court has held, require the showing of "antitrust type" injury.[9]

In looking at the statements made in Congress when RICO was passed, the Supreme Court found that Congress intended to reach both the organized criminal activities aimed at infiltrating legitimate business, as well as traditional criminal conspiracies.  *United States v. Turkett, supra,* 452 U.S. 588–93, 101 S.Ct. at 2531–2533. The Supreme Court, however, said nothing about the use of civil RICO as a means of attacking any and every business dispute between legitimate business enterprises wholly unconnected with organized criminal activities.  This problem has been left to the district and circuit courts, which have been confronted with RICO claims that have been clumsily tacked on to virtually every commercial civil action they have seen.

In discussing some of the problems caused by the wide-ranging use of RICO in civil actions, Judge Pollack noted that, if RICO was given its broadest possible reading, there would be no limit to what plaintiffs could plead as a RICO cause of action. Judge Pollack suggested, therefore, that there must be a showing that the "plaintiff's injury [was] caused by a RICO violation and not simply by the commission of the predicate offense, such as mail fraud or federal securities fraud."  *Moss v. Morgan*

---

**8.** A reasonable and well-reasoned approach toward limiting the abuse of RICO in the civil context without pulling any of the statute's teeth is offered in Note, *Civil RICO and "Garden Variety" Fraud—A Suggested Analysis,* 58 St. John's L.Rev. 93 (1983). The author notes that Congress, in passing RICO, did not "intend to allow into federal court nearly every business dispute in which two acts of deceit can be alleged." *Id.* at 123. To avoid this result, the author suggests that a plaintiff who can show no more than predicate act violations "should be relegated to existing remedies under state law." *Id.* at 126.

Those plaintiffs who can show predicate offenses other than simple fraud, such as arson, extortion, bribery, labor racketeering and so on, should be allowed to proceed under RICO. *Id.*

**9.** *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). ("Plaintiffs must prove *anti-trust* injury, which is to say injury of the type antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.")

*Stanley, Inc.*, 553 F.Supp. 1347, 1361 (S.D. N.Y.), *aff'd in part, rev'd in part,* 719 F.2d 5 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* —— U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Thus, the plaintiff would have to show that he was injured "by reason of" a violation of the RICO statute, in other words that he "suffered directly a racketeering enterprise injury at the hands of those sought to be reached" by RICO. *Id.*

Although the Second Circuit chose not to reach this issue when it affirmed Judge Pollack's decision, it did take note of a number of district court decisions that had read the "by reason of" language in the statute as a limitation on the availability of RICO in civil actions. *Moss v. Morgan Stanley, Inc., supra,* 719 F.2d at 20 n. 16.

The trend noted by the Second Circuit has since continued. *See, e.g., Margolis v. Republic National Bank,* 585 F.Supp. 595 (S.D.N.Y.1984) (plaintiff who claimed bank advertisements offering "highest rates of interest" were fraudulent failed to allege injury "by reason of" RICO violation); *Kaufman v. Chase Manhattan Bank, N.A.,* 581 F.Supp. 350 (S.D.N.Y.1984) (plaintiff who alleged injury from securities law violation failed to show injury "by reason of" RICO violation); *Furman v. Cirrito,* 578 F.Supp. 1535 (S.D.N.Y.1984) (garden variety business fraud does not qualify as injury "by reason of" RICO violation),

*aff'd,* 741 F.2d 524 (2d Cir.1984); *Sedima S.P.R.L. v. Imrex Co.,* 574 F.Supp. 963 (E.D.N.Y.1983) (failure to allege injury separate from that caused by predicate acts means plaintiff failed to satisfy "by reason of" requirement), *aff'd,* 741 F.2d 482 (2d Cir. July 25, 1984); *Richardson v. Shearson/American Express Co.,* 573 F.Supp. 133 (S.D.N.Y.1983) (basic securities fraud claim cannot be converted into RICO action because plaintiff failed to show injury beyond that caused by predicate act violations).[10]

In the instant case, the plaintiffs have failed to show that the injury they have suffered is "by reason of" a RICO violation—in other words, they have failed to show that they have suffered any injury beyond that suffered as a result of the predicate acts of mail fraud. For this reason, their RICO complaint must be dismissed.

C. *The Court Lacks Jurisdiction Over the Pendent Claims and Parties*

The plaintiffs also argue that the Court has pendent jurisdiction over the state law claims and over those parties who are not subject to RICO. In making these contentions, the plaintiffs show that they misperceive the doctrine of pendent jurisdiction, which is a very narrow expansion of the federal courts' limited jurisdiction.

---

**10.** After this opinion was drafted, but before it was completed, the Second Circuit issued a trio of opinions that sharply cut back on the availability of civil RICO and provide further authority for dismissal of this action. *Sedima S.P.R.L. v. Imrex Co., supra; Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.1984); *Furman v. Cirrito,* 741 F.2d 524 (2d Cir.1984). In *Sedima,* the court, answering the question not answered in *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 20 and n. 16 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman,* —— U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), held that to properly state a RICO claim, the plaintiff must show some injury "by reason of" a violation of RICO. In other words, that there was an "injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter." *Sedima S.P.R.L. v. Imrex Co., supra,* 741 F.2d at 496. The Second Circuit then went further,

reaching an issue not raised in the instant case, and added that, in order to successfully make out a RICO cause of action, the plaintiff must also show a prior criminal conviction. *Id.* at 496–503.

In *Bankers Trust,* another panel of the Second Circuit followed the reasoning of the *Sedima* panel as to the need to show a distinct injury resulting from the predicate acts themselves. *Bankers Trust Co. v. Rhoades, supra,* 741 F.2d at 515–518.

In *Furman,* the last of the three cases, a third panel of the court, while expressing strong disagreement with the *Sedima* and *Bankers Trust* panels, nevertheless affirmed the dismissal of a civil RICO complaint on the authority of those two cases. The *Furman* court noted that the Second Circuit had rejected a request from within the court for an in banc hearing of all three cases prior to the issuance of the individual opinions. *Furman v. Cirrito, supra,* 741 F.2d 525.

In *In re Investors Funding Corp. of New York Securities Litigation*, 523 F.Supp. 550 (S.D.N.Y.1980), Judge Connor carefully explained the basis of pendent jurisdiction over both claims and parties. Before pendent claim jurisdiction will be exercised, a two-part test must be applied. First, the court must decide whether the state and federal claims arose from a common nucleus of operative facts. Second, the court must decide whether judicial economy, convenience, and fairness to the litigants should require the parties to litigate the state and federal claims together. *Id.* at 560 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). If the federal claims are dismissed before trial, "there can be no pendent claim jurisdiction ... over common law claims by the plaintiffs." *In re Investors Funding Corp. of New York Securities Litigation, supra*, 523 F.Supp. at 560. *See also McLearn v. Cowen & Co.*, 660 F.2d 845, 848 (2d Cir.1981).

As to pendent party jurisdiction, a plaintiff faces an even more difficult barrier to surmount. In addition to meeting the two tests outlined in *United Mine Workers, supra*, the plaintiff must also show that not only does Article III allow such a claim, but that jurisdiction has not been expressly or implicitly withdrawn by Congress. *In re Investors Funding Corp. of New York Securities Litigation, supra*, 523 F.Supp. at 560–61 (citing *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) and *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)).

Applying these guidelines to the case at bar, the Court holds that, because the federal causes of action were dismissed before trial, it cannot exercise its pendent jurisdiction over the common law causes of action. And because there are no federal claims against defendants Rothzeid and Miller, the pendent party jurisdiction cannot be used to bring them into this trial.

## D. *Defendants Are Not Entitled to Attorneys' Fees*

The American Rule is that each party must bear its own legal expenses. The award of attorneys' fees is a rarity and is made only when necessary "to protect [prevailing parties] from being forced to litigate claims that have no legal or factual basis." *Steinberg v. St. Regis/Sheraton Hotel*, 583 F.Supp. 421, 424 (S.D.N.Y.1984) (citing *Christiansburg Garment Co. v. Equal Opportunity Employment Commission*, 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978)). Attorneys' fees are also awarded "where it is shown that the non-prevailing party acted with malice and/or in bad faith." *Driscoll v. Oppenheimer & Co.*, 500 F.Supp. 174, 175 (N.D.Ill.1980) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)).

Here, the plaintiffs complaint and amended complaint contained fatal defects that required its dismissal. In dismissing the original complaint, Judge Duffy not only noted that the plaintiffs had failed to meet six of the seven necessary elements of a RICO complaint, *Gramercy 222 Residents Corp. v. Gramercy Realty Associates, supra*, slip op. at 4, but also warned that if an amended complaint was filed and it still fell short of meeting the *Moss* requirements, "I will entertain a motion to dismiss and will not hesitate to award fees, if justified, pursuant to Rule 11 of the Federal Rules of Civil Procedure." *Id.* at 6.

This is an extraordinary warning to the plaintiffs' attorneys—one which they failed to heed. Nevertheless, this Court feels that, given the complexity and, previously, rather unclear status of the RICO statute, it cannot be said that there was no legal or factual basis for the claims made by the plaintiffs in their amended complaint, or that they acted in bad faith by filing an amended complaint after Judge Duffy dismissed the original complaint.

## CONCLUSION

Because the plaintiffs failed to state a claim under RICO against defendants Ro-

thzeid and Miller, the motions to dismiss the complaint against these two defendants are granted. The Court also finds that because it lacks pendent jurisdiction over the non-federal causes of action and over the parties against whom no federal claims have been stated, the state causes of action against Rothzeid and Miller are also dismissed. And, for the reasons outlined above, the motions for attorneys' fees by Rothzeid and Miller are denied. The Clerk shall enter judgment accordingly.

SO ORDERED.